475 P.2d 253

**TRANSPORTATION INSURANCE COMPANY, a division of Continental National American Group, a corporation, Appellant,**

v.

**Gordon WADE, Administrator of the Estate of Leonard Maurice Aubuchon, deceased, Appellee.**

**No. 9907–PR.**

Supreme Court of Arizona, In Banc.
Oct. 8, 1970.

Chandler, Tullar, Udall & Richmond, by D. B. Udall, Tucson, for appellant.

David S. Wine, Norman A. Schwartz, Tucson, for appellee.

Molloy, Jones, Hannah, Trachta & Coolidge, by John F. Molloy, and Miller, Pitt & Feldman, by David J. Leonard, Tucson, for amicus curiae.

McFARLAND, Justice.

This case comes to us on a Petition for Review from a decision of the Court of Appeals, Division Two, reported at 11 Ariz. App. 14, 461 P.2d 190, which affirmed the judgment of the Superior Court of Pima County. The facts are undisputed and we set them forth as they appear in the Stipulation of Facts in the Record on Appeal.

"* * *

1. On January 22, 1967, the decedent, Leonard Maurice Aubuchon, was a passenger in a 1962 Buick automobile owned by him and driven by his brother, Norman Lee Aubuchon.

2. That said Buick was struck by a 1956 International Harvester Truck owned by Louis Singer and driven by John Calvin Howard, in the State of Arizona.

3. That the accident was caused by the negligence of John Calvin Howard and, at the time of the accident, John Calvin Howard was an uninsured motorist and there was no policy of insurance applicable to said vehicle or driver.

4. That Leonard Maurice Aubuchon was killed as a result of said accident and that the damages to plaintiff as a result of said accident exceed $10,000.00.

5. That at the time of said accident there was in full force and effect a policy of insurance covering the 1962 Buick, issued to the decedent, being Policy No. 88–18397541, issued by the Farmer's Insurance Exchange; that among other coverages applicable was uninsured motorist coverage in the amount of $10,000.00.

6. The plaintiff made claim against Farmer's Insurance Exchange for the full amount of the uninsured motorist coverage, and Farmer's Insurance Exchange has paid the same.

7. That at the time of said collision there was in full force and effect a policy of insurance issued to Norman Lee Aubuchon, written by the defendant, Transportation Insurance Company, being policy No. AS 048 391 37 23 88.

8. That plaintiff has made claim against the defendant for the full amount of the uninsured motorist coverage under the policy issued to Norman Lee Aubuchon, and defendant has refused to pay said claim by virtue of the other insurance provisions of Part IV of said policy.

9. Under Part IV of said policy issued by the defendant, the decedent, Leonard Maurice Aubuchon, is an insured."

The Superior Court held that the uninsured motorist coverage of the policy issued by Transportation Insurance Company (Transportation) was available to the decedent's administrator, Wade even though it was secondary insurance and despite the fact that the policy contained an "Other Insurance" clause. That clause reads as follows:

"OTHER INSURANCE—With respect to bodily injury to an insured while occupying an automobile not owned by the named insured, the insurance under Part IV shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only

in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.

"Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable for a greater proportion of any loss to which this coverage applies than tl.e limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance."

Wade has no argument with the wording of the clause and in his brief " * * * readily admits that if the sole consideration in this matter were the policy provisions, then plaintiff's decedent would not be entitled to any 'uninsured motorist' benefits under the defendant's policy." Both sides agree the sole question is whether the "other insurance" clause, in the light of Arizona's uninsured motorist statute, is contrary to public policy.

The appellee places great emphasis on the public policy relating to liability insurance as enumerated by decision of this court, citing Schecter v. Killingsworth, 93 Ariz. 273, 380 P.2d 136; Jenkins v. Mayflower Insurance Exchange, 93 Ariz. 287, 380 P.2d 145, and Sandoval v. Chenoweth, 102 Ariz. 241, 428 P.2d 98, in support of his position that such policy is to provide as much insurance protection as possible, and

cites Geyer v. Reserve Insurance Company, 8 Ariz.App. 464, 447 P.2d 556, in which it was stated that these cases:

" * * * indicate to us that Arizona will be nowhere but in the forefront of jurisdictions in making available to automobile accident victims the fullest benefits of insurance coverage."

In Mayflower, this Court considered a small print provision of an insurance policy which denied coverage because an otherwise qualified driver was wearing a uniform of the armed forces of the United States. We have held that the "omnibus clause" is a part of every motor vehicle liability policy "by whatever name it is called" and we quoted from Schecter to point out that the primary purpose of the Financial Responsibility Act was "the providing of security against uncompensated damages arising from operation of motor vehicles on our highways." In Sandoval, relying on Mayflower, this Court refused to limit recovery by the injured party to the minimum amount specified in the Financial Responsibility Act under a policy which otherwise contained higher limits of coverage.

However, in those cases we were dealing wtih wording in policies limiting liability to the extent the provisions may have been contrary to public policy. We have held these and other such non-liability clauses were against public policy.

Those provisions were written by the insurance company, while here we are dealing with the uninsured motorist insurance provisions required by our statute,[1] in which

1. § 20-259.01. *"Coverage to include protection from operators of uninsured motor vehicles; right or rejection; supplemental or renewal policy*
   On and after January 1, 1966, no automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle, shall be delivered or issued for delivery in this state, with respect to any motor vehicle registered or principally garaged in this state, unless coverage is provided therein or sup-

plemental thereto, in limits for bodily injury or death set forth in § 28-1142, under provisions filed with and approved by the insurance director, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom. This coverage shall at the time the policy is issued be called to the attention of the named insured who shall have the right to reject such coverage. Unless the named insured requests such coverage in writing, such coverage

it is evident the Legislature was attempting to fill a gap in our law.

The motorist is not compelled to carry this insurance, but he is encouraged to do so by the statute which requires that an insured must affirmatively reject such coverage if he does not desire it. In interpreting provisions of insurance policies issued in compliance with this provision of our statute we must give consideration as to what the Legislature deemed to be in the public interests when it passed the uninsured motorist law. They passed the law providing for minimum coverage in the amounts of $10,000 per person, $20,000 per occurrence, and $5,000 for property damage, as provided for in the Financial Responsibility Act,[2] after this court had handed down decisions liberally interpreting the insurance law for the protection of the public. It is reasonable to suppose that it intended such protection be extended in the Uninsured Motorist Act, and that could be not less than the protection of the minimum requirement provided for the public in the Financial Responsibility Act. Such protection is not to be whittled away by small print provisions, or extended beyond the intent of the Legislature. In the instant case, Wade's decedent bought insurance giving him this minimum, mandatory coverage, but he bought no more and he received the full measure of such coverage. He is now claiming the benefit of the uninsured motorist coverage bought by his brother who was the driver of the car. He should not receive this additional benefit unless the Legislature reasonably intended that he have it.

It is true that the decedent's brother paid premiums on the policy which the decedent's administrator seeks to reach, but he did so for his own protection and for the protection of "other insureds" where such individuals would not otherwise have the benefit of available funds within the statutory financial limits. And it is not sheer speculation to conclude that the premiums paid for this coverage reflected the limitation of coverage imposed by the statutes. The administrator seeks to have this Court transform a limited purpose coverage into an extended insurance plan which can be reached even in amounts beyond those contemplated by statute. On the other hand Transportation urges upon us a construction of the "Other Insurance" clause which would virtually make uninsured motorist coverage non-existent—equivalent to a biological appendix of the insurance industry in that it can be ignored most of the time but easily removed when it causes discomfort. In the case of Porter v. Empire Fire and Marine Insurance Company, 106 Ariz. 274, 475 P.2d 258, and Bacchus v. Farmers Insurance Group Exchange, 106 Ariz. 280, 475 P.2d 264, decided this date, we took a dim view of the carriers' lack of enthusiasm to fully abide by their liability within the limits imposed by A.R.S. § 28-1170 and § 20-259.01; here we also reject the zealousness of the insured's administrator to impose liability beyond the financial limits of these statutes.

need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to him by the same insurer." Added Laws 1965, Ch. 34, § 1.

**2.** § 28–1170. "*Motor vehicle liability policy*" *defined*

&ast; &ast; &ast; &ast; &ast;

"B. &ast; &ast; &ast;

2. It shall insure the person named therein and any other person, as insured, using the motor vehicle or motor vehicles with the express or implied permission of the named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of the motor vehicle or motor vehicles within the United States or the Dominion of Canada, subject to limits exclusive of interest and costs, with respect to each motor vehicle as follows:

(a) Ten thousand dollars because of bodily injury to or death of one person in any one accident.

(b) Subject to the limit for one person, twenty thousand dollars because of bodily injury to or death of two or more persons in any one accident.

(c) Five thousand dollars because of injury to or destruction of property of others in any one accident. &ast; &ast; &ast;"

As amended, Laws 1961, Ch. 94, § 4,

When considering public policy there is a line of distinction which must be drawn between the two related statutes. The Legislature intended the Financial Responsibility Act to protect the general public against the individual, financially irresponsible motorist. On the other hand the Uninsured Motorist law compels the carriers to provide economic protection for the insured individual against the financially irresponsible segment of the driving public. The former is for the public in general and the latter for the individuals who have the foresight to protect themselves against the public. The only point of connection between the two statutes is the reference in the Uninsured Motorist Law to the minimum insurance amounts of 10/20/5 in the Financial Responsibility Act which, of itself, is a good indicia that the Legislature intended to confine its legislative concept of public policy to these stated amounts.

The rule stated in Stephens v. Allied Mutual Insurance Company, 182 Neb. 562, 156 N.W.2d 133, has its full application in a case of this nature:

"* * * The uninsured motorist statute established in this state a public policy that every insured is entitled to recover damages he or she would have been able to recover if the offending motorist had maintained a policy of liability insurance in a solvent company. * * *"

Here, had the offending motorist carried insurance in accord with the Financial Responsibility Act, Wade would have recovered the same amount—$10,000—as he did here. The public policy as expressed in the statute has been satisfied and any "excess-escape clauses" applying to superfluous amounts of coverage fall in the area of contract law between the insuring parties and not in the realm of public interest. This principle is equally applicable to a case such as Geyer v. Reserve Insurance Company, supra, where a passenger recovered under the liability clause of the primary policy applicable to the car in which he was riding and also under his own uninsured motorist policy applicable to the car operated by the uninsured tort-feasor. Geyer was able to reach beyond the statutory minimum because both motorists were liable and he recovered the exact amount he would have obtained had both motorists been insured. In the instant case only the uninsured motorist was negligent and the liability coverage was not available.

We feel this holding is consistent with the principles set forth in the two other related cases of Porter and Bacchus, supra. These cases required construction of uninsured motorist coverage provided for in A.R.S. 20–259.01. In Bacchus we held it a violation of the statute to allow insurers to reduce the minimum $10,000 of available insurance by setoff provisions for "advancements" under the Medical Payment Coverage of the policy. In Porter we refused to recognize the efficacy of the "excess-escape" clause of an insurance policy when it reduced the insured's available coverage to less than the minimum $10,000 per person.

We feel that in so doing, this Court has abided by the Legislature's expression of our public policy by requiring that insurers stand behind their commitment of providing their insureds with no less than $10,000 per person when such insureds contract and pay for such insurance. This is its purpose. But beyond this amount the Court must leave the parties to the expressed terms of their contract.

Professor Widiss in his treatise, A Guideline to Uninsured Motorist Coverage, criticized the unfairness that results in those states which fully enforce the terms of "Other Insurance" provisions ("Excess-escape clauses"). Professor Widiss states:

"These courts have precluded recovery both in cases where the claimant has not been adequately compensated by the primary coverage and in cases where he has been fully indemnified. It should be noted that a number of these decisions were made on the basis that there was no uninsured motorist legislation (which required coverage) applicable to the consideration of the endorsement before the

court. In several cases this was true because the state's uninsured motorist law was adopted after the accident at issue occurred. This is important because decisions reaching an opposite result in other jurisdictions have sometimes been predicated on the mandate created by legislation which is comparable to that which now exists in these states, and thus applies to cases which would now raise the question. Therefore, in light of decisions in other jurisdictions as to the relationship between such legislation and the enforceability of these provisions, the above-mentioned decisions precluding recovery may not necessarily serve as precedent for any new cases in jurisdictions where a legislative requirement of coverage now applies. However, it is also true that some decisions on the enforceability of the Other Insurance clauses have specifically concluded that the existence of uninsured motorist legislation does not affect the enforceability of this provision.

The inequity of this provision is perhaps most clearly illustrated by examining the consequences of its application when several persons are seriously injured by an uninsured motorist—as, for example, a hypothetical accident where one person is killed and four persons each sustain damages in excess of $10,-000. The uninsured motorist endorsements are written with limits per accident, typically $20,000 per accident (although it may be as little as $10,000 or as much as $30,000 per accident in a few states). In this hypothetical case, just two of the possible claims would exceed the total amount of insurance provided by one endorsement. Alternatively, the coverage under the primary insurance might be divided evenly, thereby giving each party some portion of the $20,-000, but leaving each of the injured parties inadequately indemnified. In this situation, the Other Insurance provision precludes recovery under the insured's own policy, even though primary insurance is either completely exhausted by other claimants or prorated among the claimants so that none of them is adequately indemnified." Widiss, A Guideline to Uninsured Motorist Coverage, (W. H. Anderson Co.) pp. 108–109.

Although in the instant case this Court refuses to breach the financial limitations mandated by the Legislature in A.R.S. § 28–1170 and A.R.S. § 20–259.01, it is our opinion that the decisions handed down today in the companion cases of Porter and Bacchus, supra, adequately deal with the basic inequity stressed by Professor Widiss,—up to the $10,000/$20,000 figures contained in the statutes. More than this we cannot do. If the health, safety and welfare of the motoring public require greater protection, the means for providing such extended insurance coverage lies solely within the province of the Legislature.

Therefore, the decision of the Court of Appeals is vacated, the judgment of the Superior Court is reversed and this matter remanded for entry of judgment consistent with this decision.

LOCKWOOD, C. J., STRUCKMEYER, V. C. J., and UDALL and HAYS, JJ., concur.