551 P.2d 1324

**TRANSAMERICA INSURANCE COMPANY, Appellant,**

v.

**Judy McKEE, a minor, by and through her mother and next friend, Karen McKee, and Bobbie Stacy, a minor, by and through her mother and next friend, Susan Stacy, Appellees.**

**No. 2 CA–CIV 2092.**

Court of Appeals of Arizona, Division 2.

June 23, 1976.

Rehearing Denied July 16, 1976.

Review Denied Sept. 14, 1976.

Browning & Wilson by William D. Browning, Tucson, for appellant.

Miller, Pitt & Feldman, P.C. by Stanley G. Feldman and Jeffrey H. Schwartz, Tucson, for appellees.

## OPINION

HOWARD, Chief Judge.

This appeal is from a partial summary judgment in a declaratory judgment action respecting an automobile insurance policy. The trial court ruled against the insurance company on the grounds that, (1) policy provisions excluding coverage in Mexico were contrary to statute, or public policy, and were therefore void; (2) the exclusion was ambiguous and therefore ineffective. The court, pursuant to 54(b), Arizona Rules of Civil Procedure, made the judgment final for appeal purposes.

In October 1973, the McKee, Stacy, Nelson and Franklin families went to Santo Tomas, Mexico, a town more than 50 miles from the Arizona border. The four families were social friends and the trip was intended as a short vacation trip to the beach. They drove to Mexico in several vehicles, and Nelson took his custom-made dune buggy.

On October 19, 1973, Franklin was given permission to use Nelson's dune buggy to take Franklin's daughter and plaintiffs Bobbie Stacy and Judy McKee for a ride. While driving with the three children as passengers, Franklin overturned the vehicle causing extensive injuries to Bobbie and Judy.

At the time of the accident, the dune buggy was not insured under any automobile liability policy issued to Nelson by United States insurance companies. He had procured Mexican insurance for the trip from Seguros America Banamex. The Banamex policy excludes coverage for damages arising from bodily injuries to passengers and the vehicle is thus uninsured as to plaintiffs. Franklin's liability insurance coverage with State Farm Insurance Company was inoperative because of a policy provision limiting coverage to occurrences within 50 miles of the United States border. There being no coverage on the driver or the vehicle for bodily injuries suffered by Bobbie and Judy, they would be covered under the uninsured motorist provision of their families' policies, absent a valid exclusion or limitation.

The McKee and Stacy families are covered by insurance policies issued by Transamerica. Both policies are identical in all respects except for a variation in an endorsement which we shall later discuss. The policies contain liability and uninsured motorist coverage. The policy territory is "anywhere in the world" provided the claims are originally asserted in the United States. Attached to the policies is a printed form entitled "Protection Against Uninsured Motorist" which limits the territory of the policy to the United States, its territories or possessions, or Canada. A Mexico coverage endorsement to the policies provides that "Family Protection Coverage" if afforded by the policy shall not be applicable to accidents occurring in the Republic of Mexico. Nowhere in the policies themselves are the words "Family Protection" used or defined. Instead, the words "uninsured motorists" are found. Both policies have an attached amendment which states that the term "uninsured automobile" includes an automobile with respect to which there is a bodily injury liability insurance policy applicable at the time of the accident but the company writing the same is or becomes insolvent. In the McKee policy this amendment is entitled "Uninsured Motorists Coverage Amendment". In the Stacy policy there are two amendments. One is entitled "Uninsured Motorists (Family Protection) Coverage Amendment". The other bears the same title as the McKee endorsement.

Can appellant issue a liability policy covering accidents in Mexico and exclude therefrom uninsured motorist coverage? Would such an exclusion violate the public policy of the State of Arizona? To answer these questions we first turn to our financial responsibility laws and in particular, A.R.S. Sec. 28–1170(B)(2) which provides that an owner's policy must insure against loss from the

liability imposed by law within the United States or Canada. The purpose of the Financial Responsibility Act is to protect the public on the highways against the operation of motor vehicles by financially irresponsible persons. *Schecter v. Killingsworth*, 93 Ariz. 273, 380 P.2d 136 (1963); *Sampson v. Transport Indemnity Company*, 1 Ariz.App. 529, 405 P.2d 467 (1965). It soon became evident that more was needed in the way of protection since many automobiles were being driven on the highway by persons who neither purchased insurance nor possessed sufficient personal financial resources to enable them to respond to damage claims. To fill this gap, the legislature passed A.R.S. Sec. 20–259.-01(A). *Transportation Insurance Company v. Wade*, 106 Ariz. 269, 475 P.2d 253 (1970). It provides:

". . . [N]o automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle, shall be delivered or issued for delivery in this state, with respect to any motor vehicle registered or principally garaged in this state, unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in § 28–1142, under provisions filed with and approved by the insurance director, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom."

The foregoing statute contains no territorial limitation. It does not mandate that uninsured motorist coverage be extended to accidents in Mexico. It does not state that such coverage is required outside the State of Arizona. However, when consideration is given to the purpose of the statute (to close the gap), it is clear that the territorial extent of coverage is the same as is required of liability coverage, to wit, the United States and Canada. The public policy of Arizona does not mandate that a liability policy which complies with our statutes by extending coverage to Canada and the United States also extend uninsured motorist coverage to all parts of the world.

■ Does the public policy of Arizona require that if an insurance company chooses to write a liability policy covering accidents in a country other than the United States and Canada it must also extend uninsured motorist coverage in that country? We have found only one case directly on point, *Mission Insurance Company v. Brown*, 63 Cal.2d 508, 47 Cal.Rptr. 363, 407 P.2d 275 (1965). The California Supreme Court, interpreting a statute equivalent to A.R.S. Sec. 20–259.01(A) held that the public policy of California as evidenced in the statute required an insurance company which extended liability coverage into Mexico to likewise extend uninsured motorist coverage. It held the territorial limits of the policy to be void.

The California court arrived at its decision with reference to no other source than the statute itself. With all due respect to the California court, we are unable to agree with its decision. It apparently arrived at its conclusion by a literal reading of the statute yet the statute contains no territorial requirements one way or the other.

The gap which our legislature sought to close was the gap existing on the streets and highways of the United States and Canada. We can find no public policy in our statutes which requires the insurance company writing a liability policy in Afars and Issas to also extend uninsured motorist coverage.

■ We do find, however, that the trial court correctly ruled that the policies were ambiguous. Neither the Mexico en-

dorsement nor the policies define the term "Family Protection". Although in the trade the terms "Uninsured Motorist Protection" and "Family Protection" are synonymous, this is not so with lay persons. The ordinary layman seeking to discover the meaning of "Family Protection" would not find it in the definitions set forth in the policy. Appellants suggest that if appellees did not understand what that term meant, they should have asked someone who did. We know of no such requirement. Where an insurer desires to limit its liability under a policy, it should employ such language as will clearly and distinctly reveal its stated purpose. *Gowing v. Great Plains Mutual Insurance Company,* 207 Kan. 78, 483 P.2d 1072 (1971). There is nothing in the McKee policy which would indicate to the McKees that the terms "Family Protection" and "Uninsured Motorist" are one and the same.

■ Appellant argues that as to the Stacy policy, the inclusion of the words "Uninsured Motorist" in parenthesis after the words "Family Protection" in one of the amendments suffices to bring home to the insured the synonymity of the terms. We do not agree.

Affirmed.

KRUCKER, J., concurs.

HATHAWAY, Judge (specially concurring).

In rejecting the rule set down by the California Supreme Court in *Mission Insurance Company v. Brown,* 63 Cal.2d 508, 47 Cal.Rptr. 363, 407 P.2d 275 (1965), requiring uninsured motorist protection in the same territory liability coverage is afforded, my colleagues have opened a serious gap in minimum standards of insurance protection in Arizona.

The uninsured motorist statute commands,

". . . *no automobile liability or motor vehicle liability policy* . . . shall be delivered or issued for delivery in this state, with respect to any motor vehicle registered or principally garaged in this state, . . ." (Emphasis added)

unless uninsured motorist coverage is provided or rejected. Implicit in the statute is the mandate that *all* automobile liability policies provide co-extensive uninsured motorist coverage.

Taking the minimum area requirement for issuing liability policies and imposing it as an uninsured motorist coverage area restriction—regardless of the parties' agreement to extend liability coverage beyond the statutory minimum—overlooks the remedial purpose of the uninsured motorist statute and the policy that it be liberally construed to effectuate that purpose. *Allstate Insurance Company v. Pesqueria,* 19 Ariz.App. 528, 508 P.2d 1172 (1973). Efforts by insurers to frustrate this statute by writing limitations into their policies, thereby affording less than the full protection required by statute, should not be validated.

Uninsured motorist coverage reasonably follows liability coverage. Thus, the statute sets no boundaries because at a minimum, they must coincide with the liability policy boundaries in view of the statutory language that *"no"* liability policy is to issue without uninsured motorist coverage. The statute does not contemplate partial uninsured motorist coverage, but full protection complementary to the liability coverage. Public policy interests are brought into sharp focus by the plight of the injured children in the case before us. Should public policy, prescribing a minimum acceptable standard of coverage, afford greater protection to foreign residents than Arizona residents? I should hope not. The Legislature's clear statutory expression should be carried out.

In *Mission Insurance Company,* supra, the California Supreme Court charts a prudent course in a remarkably similar situation, stating:

". . . [P]ublic policy . . . requires that the insured be protected against damages for bodily injury caused by an uninsured motorist in the same territory in which the policy covers him for liability.

Accordingly, the territorial limitation contained in the insurance policy involved in the present case is void, because it is contrary to public policy." 47 Cal.Rptr. at 364, 407 P.2d at 276.

Also see, Widiss, A Guide to Uninsured Motorist Coverage, § 3.5 (1969).

I would affirm for the foregoing reasons.