600 P.2d 759

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a corporation, Appellant,**

v.

**Cameron Barkley WILLIAMS, Appellee.**

**No. 1 CA–CIV 4108.**

Court of Appeals of Arizona, Division 1, Department B.

Sept. 18, 1979.

Toci, Musgrove, Murphy & Beck by Michael R. Murphy, Prescott, for appellant.

William Clark Kennedy, Kingman, for appellee.

## OPINION

JACOBSON, Acting Presiding Judge.

The sole issue on this appeal is whether an insurance company which has issued three separate automobile policies covering three separate automobiles owned by the insured is required to pay the maximum uninsured motorist coverage under each policy when the insured is injured while a passenger in a non-owned uninsured vehicle.

Appellee-plaintiff, Cameron Barkley Williams (insured), brought this action against his insurer, appellant-defendant, State Farm Mutual Automobile Insurance Company (insurer), to recover the proceeds of uninsured motorist benefits allegedly due under three different insurance policies issued to him by the insurer. It is the insured's position that he is entitled to collect the sum of $30,000 ($10,000 on each policy) as a result of being involved in an accident with an uninsured motorist. It is insurer's position that because of "other insurance" clauses contained in all three policies, the insured is entitled to collect only the aggregate sum of $10,000, which it tendered to the insured prior to suit. The trial court awarded the insured $30,000 insurance coverage plus $3,500 in attorney's fees. The insurer has appealed.

The facts are not in dispute and the legal issue in the trial court was disposed of by cross-motions for summary judgment.

On May 26, 1970, the insured, while a passenger in an automobile owned and operated by Russell Warmdohl, was injured as the result of an automobile accident when the Warmdohl automobile was struck by an automobile being driven by Edward Ruiz. Both Warmdohl and Ruiz were uninsured. It appears that as a result of this accident the insured suffered damages in excess of $30,000.

Prior to the accident, the insurer had issued to the insured three separate automobile insurance policies insuring a 1965 Cadillac, a 1969 Ford station wagon and a 1964 Ford sedan. The insured paid a separate premium for each policy. Each policy provided uninsured motorist benefits in the face amount of $10,000 for each person and $20,000 for each accident. These sums, at the time, were in compliance with A.R.S. § 20–259.01, Arizona's uninsured motorist statutes.

All three policies contained the following clause:

"Under coverage U [uninsured motorist benefits] with respect to *bodily injury* to an *insured* while *occupying* a motor vehicle not owned by a named insured under this coverage, the insurance hereunder shall apply only as excess insurance over any other similar insurance available to such occupant, and this insurance shall then apply only in the amount by which the applicable limit of liability of this coverage exceeds the sum of the applicable limits of liability of all such other insurance.

"Subject to the foregoing paragraph, under coverage U if the *insured* has other similar insurance available to him against a loss covered by this coverage, then the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable under this coverage for a greater proportion of the applicable limits of liability of this coverage than such limit bears to the sum of the applicable limits of liability of this insurance and such other insurance." (Emphasis in original.)

This clause is commonly known as an "other insurance" provision, the first paragraph providing "excess coverage" and the second "pro-rata coverage." The validity of "other insurance" provisions has been upheld against an attack that such provisions are against the public policy of this state in the case of *Transportation Insurance Co. v. Wade*, 106 Ariz. 269, 475 P.2d 253 (1970). In *Wade*, the decedent, while riding as a passenger in an automobile driven by his brother, was killed as a result of the negligence of the uninsured driver of a second vehicle. The decedent had an automobile insurance policy with Farmers Insurance Exchange and the brother was insured by Transportation Insurance Company. Both policies provided uninsured motorist benefits. The administrator made demand upon and was paid by Farmers the sum of $10,-000 under its uninsured motorist coverage. The administrator then sought a similar sum from Transportation Insurance Company under its uninsured motorist coverage. The insurance company denied recovery based upon an "other insurance" clause containing exactly the same language as is contained in the policies under consideration here. The Arizona Supreme Court, in upholding the insurance company's contentions, stated:

"The public policy as expressed in the statute has been satisfied [by the $10,000 payment by Farmers] and any 'excess-escape clauses' applying to superfluous amounts of coverage fall in the area of contract law between the insuring parties and not in the realm of public interest." 106 Ariz. at 273, 475 P.2d at 257.

In reaching this conclusion the court cited with approval the following language from *Stephens v. Allied Mutual Insurance Co.*, 182 Neb. 562, 156 N.W.2d 133 (1960):

"[T]he uninsured motorist statute established in this state a public policy that every insured is entitled to recover damages he or she would have been able to recover if the offending motorist had maintained a policy of liability insurance in a solvent company . . . ." 156 N.W.2d at 138.

A similar issue was presented in *McCarthy v. Preferred Risk Mutual Insurance Co.*, 454 F.2d 393 (9th Cir. 1972), where the 9th Circuit, in a diversity action, was called upon to interpret Arizona law on uninsured motorist benefits. In *McCarthy*, the insured held two insurance policies on one automobile, one being issued by State Farm and the other by Preferred Risk. Both policies provided uninsured motorist benefits in the face amount of $10,000 and both

contained "other insurance" clauses similar to those under consideration here. Based upon these clauses each insurer tendered $5,000 to the insured after she was injured as a result of an accident with an uninsured motorist. The insured contended she was entitled to receive the full $10,000 of coverage from each insurer.

Relying upon *Wade*, the 9th Circuit held that based upon the "other insurance" clauses in both policies, the insurer's liability was limited to $5,000 each. In response to the insured's contention that, unlike the factual situation in *Wade*, she bought and paid for both policies and therefore was entitled to full benefits under both, the court stated:

> "We are persuaded, however, that the result would have been the same in *Wade* even if the second uninsured motorist clause had, as in our case, been in a policy purchased by the injured party, providing both policies contained 'other insurance' clauses. The controlling rationale in *Wade* rests upon the construction the court there placed upon the legislative policy expressed in the Uninsured Motorist Act, namely to provide each person entitled to protection under one or more uninsured motorist clauses minimum coverage of ten thousand dollars, and leaving any additional such coverage to be fixed by contract between the parties." 454 F.2d at 396.

The Arizona Supreme Court has recently acknowledged the correctness of *McCarthy*. *State Farm Mutual Insurance Co. v. Herron*, 123 Ariz. 315, 599 P.2d 768 (1979).

The insured, while recognizing the efficacy of these cases, where two insurance companies are involved, urges that "other insurance" clauses appearing in multiple policies issued by one insurer renders the clauses ambiguous and to give them effect "defeats the legitimate expectations of the insured." The rationale for both of these contentions finds expression in the case of *Glidden v. Farmers Automobile Insurance Ass'n.*, 57 Ill.2d 330, 312 N.E.2d 247 (1974). *Also see Sturdy v. Allied Mutual Insurance Co.*, 203

Kan. 783, 457 P.2d 34 (1969); *United Services Automobile Ass'n. v. Dokter*, 86 Nev. 917, 478 P.2d 583 (1970).

In *Glidden*, as here, the insured had purchased three separate automobile insurance policies from one company, each policy having the face value coverage of $10,000 due to losses suffered as the result of injury by an uninsured motorist and each having an "other insurance" clause. The insured, while a pedestrian, was injured by an uninsured motorist. While recognizing that the "literal" meaning of these clauses would limit liability to $10,000, nevertheless, the court allowed recovery of $30,000. It reached this result as follows:

> "When an insured purchases three distinct policies from an insurer, each providing the specified coverage, and pays a separate premium for each, does he reasonably contemplate that the 'other insurance' clauses therein are effective to reduce his recovery to what he would have obtained under one policy? We think not. The apparent purpose of 'other insurance' clauses is to make certain that one company does not pay a disproportionate amount of a loss which is to be shared with another company. There is no purpose in proration unless the 'other insurance' is written by another company. The clause has no meaningful purpose when applied to coverage issued by one company to one insured. In this situation its meaning is ambiguous, and the clause should be construed in favor of the insured." 312 N.E.2d at 250.

In our opinion, this result is a pyramid of fallacious reasoning. First, if the "literal" language of the clauses makes clear that liability for uninsured motorist coverage is limited to $10,000 or a pro rata share of that amount, we know of no reason why an insured, assuming he or she has read the clause, would "contemplate" anything else. Moreover, why the "reasonable contemplation" of an insured who purchases three separate policies on three separate automobiles should be greater than the insured, as in *McCarthy*, who purchased two policies on one automobile, escapes us. Also, it is in-

consistent to say that an insured "contemplates" the other insurance policies as insurance affording him coverage, but does not "contemplate" that same insurance for purposes of activating the "other insurance" clause.

Second, the court's determination of the "apparent reason" for the clause is naive. The sole purpose of the "other insurance" clause is to decrease the liability of the insurer under the policy. The question is can this be legally accomplished and has the insurer clearly done so. Finally, we find it pure sophistry to say that two "other insurance" clauses appearing in policies written by two separate insurers are unambiguous, but that the same clauses appearing in two policies issued by the same insurer are ambiguous. *See* dissent in *United Services Automobile Ass'n v. Dokter*, 86 Nev. 917, 478 P.2d 583 (1970).

What appears to be really bothering the Illinois court is that the insured paid premiums for three separate policies. As it states:

> "The insured is better off [being able to receive more coverage than if the wrongdoer had insurance in the minimum amount] because he paid additional premiums. If there is to be a 'windfall' in this situation, it should be to the insured, who paid the several premiums, rather than to the insurer, which collected them." 312 N.E.2d at 250–51.

This has great populist appeal, but overlooks what risk was being insured against and what the insurance contract provided. Under these policies, each automobile was insured and it is theoretically possible that at one given moment, all three vehicles could be operating and in three individual accidents, be struck by three uninsured motorists. In such a case each operator would have $10,000 coverage under each policy. This was the risk insured against and this is what the premium was paid for. Under the terms of the policy, the risk insured and the premium received was not to afford coverage of $30,000 for one accident. *See Talbot*

*v. State Farm Mutual Ins. Co.*, 291 So.2d 699 (Miss.1974).

The insured has cited the following cases which would allow the result he urges here, that is, the "stacking" of uninsured motorist coverage. *Cammel v. State Farm Mutual Automobile Ins. Co.*, 86 Wash.2d 264, 543 P.2d 634 (1975); *Keel v. M.F.A. Ins. Co.*, 553 P.2d 153 (Okl.1976); *Mountain West Farm Bureau v. Neal*, 169 Mont. 317, 547 P.2d 79 (1976); *Employer's Liability Assurance Corp. v. Jackson*, 289 Ala. 673, 270 So.2d 806 (1972); *Gillen v. United Services Automobile Ass'n*, 300 So.2d 3 (Fla.1974). However, in each of these cases the courts have concluded that under the particular uninsured motorist laws of that state, "other insurance" clauses are against public policy and are invalid. This is contrary to the law in Arizona as established by *Transportation Insurance Co. v. Wade, supra.*

The insured has also cited *Woolston v. State Farm Mutual Insurance Co.*, 306 F.Supp. 738 (W.D.Ark.1969), which held in a diversity action that the same "other insurance" clause as is involved here becomes ambiguous when appearing in policies issued by the same insurer. However, this federal district court decision appears to be contrary to the law established in the state where it sits. *See M.F.A. Mutual Insurance Co. v. Wallace*, 245 Ark. 230, 431 S.W.2d 742 (1968).

We agree with the reasoning of *Sammons v. Nationwide Mutual Insurance Co.*, 267 A.2d 608 (Del.Super.Ct.1970), where insurance policies were issued by the same company on two different automobiles, each containing "other insurance" clauses similar to those involved here, and it was contended that the clauses were ambiguous, the court stated:

> "Again the language of the policy itself must be looked to and if it is unambiguous it is controlling. The limitational provisions of paragraph 2 arise 'if the Insured has other similar insurance available to him and applicable to the accident.' [1] The words are clear, direct, and

---

1. Compare with the language of the policies involved here: "if the insured has other similar insurance available to him against loss covered by this coverage . . . ."

susceptible to only one reasonable meaning, that coverage is limited to the higher of any two or more policies available to the insured, including those held by insured himself as well as under policies held by other persons." 267 A.2d at 610.

■ Under Arizona law uninsured motorist coverage may be limited to the amounts set forth in the Uninsured Motorist Act. Provided this amount of coverage is available, any other coverage is subject to contract between the insured and the insurer. By contract, the insurer has unambiguously limited its coverage to that amount. This it can legally do and the insured receives exactly what he would have been entitled had the uninsured motorist held a policy with the minimum statutory limits.

■ The insurer has also appealed the granting of attorney's fees pursuant to A.R.S. § 12–341.01. This issue is disposed of both by a reversal on the merits and the case of *USLIFE v. Soule*, 122 Ariz. 79, 593 P.2d 302 (App.1979). *USLIFE* held that A.R.S. § 12–341.01 cannot be applied to an action filed before the effective date of the statute. This action was filed May 25, 1972, well before the statute's effective date, September 23, 1976. The award for attorney's fees is reversed.

The judgment of the trial court is reversed and the matter remanded with directions to limit the insured's recovery in accordance with this opinion.

OGG, C. J., and WREN, J., concur.