139 Ariz. 296 (1983)
678 P.2d 481
Emil BAKKEN; Vernal Dean Bakken; and Orlien Bakken, Plaintiffs-Appellees,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation, Defendant-Appellant.
No. 1 CA-CIV 5774.
Court of Appeals of Arizona, Division 1, Department D.
October 20, 1983.
Reconsideration Denied December 1, 1983.
Review Denied March 6, 1984.
*297 Langerman, Begam, Lewis & Marks by Frank Lewis and Elliot G. Wolfe, Phoenix, for plaintiffs-appellees.
Toci, Musgrove, Murphy & Beck by Michael R. Murphy, Prescott, for defendant-appellant.
OPINION
HAIRE, Presiding Judge.
In this appeal we are required to determine whether "other insurance" clauses contained in the uninsured motorist coverage provisions of two policies issued by State Farm Mutual Automobile Insurance Company (State Farm) prevented the plaintiffs from recovering the total amount of insurance provided in both policies. The trial court was of the opinion that the "other insurance" clauses were not applicable to the claims presented in the plaintiffs' complaint, and accordingly, entered judgment holding that State Farm must provide the limits of uninsured motorist coverage on both of the policies.
The facts are essentially uncontroverted. The plaintiffs are the surviving husband and two sons who lived in the same household with the decedent, Mrs. Julia Bakken. Mrs. Bakken died shortly after receiving bodily injuries as a result of the negligence of an uninsured motorist whose vehicle struck her while she was walking across a public street. At the time of the accident her husband (Emil) and one of her sons (Vernal) each had a motor vehicle liability policy issued by State Farm covering their respective automobiles. Each policy provided uninsured motorist coverage in the amount of $15,000 for bodily injury to one person and $30,000 for bodily injury to two or more persons in the same accident.
Under the terms of both policies, Mrs. Bakken was an "insured," as she was a spouse or relative living in the same household as both named insureds. After Mrs. Bakken's death, the plaintiffs through their attorney made demand upon State Farm for payment of the sum of $30,000, representing the total of the $15,000 limits of uninsured motorist coverage on each of the policies. State Farm, relying on the "other coverage" or so-called "anti-stacking" clauses of the policies, and with express reference to State Farm Mutual Auto. Ins. Co. v. Williams, 123 Ariz. 455, 600 P.2d 759 (1979), took the position that it was liable for only $15,000, and paid that amount to plaintiff Emil Bakken, the surviving husband of the decedent and the named insured on one of the policies.
Plaintiffs' complaint contained two claims. The first claim sought a judicial determination that State Farm was liable for an additional $15,000 in uninsured motorist coverage. The second claim sought additional damages from State Farm for its alleged "bad faith" in refusing to pay the additional $15,000. The "bad faith" claim has been stayed pending an appellate determination of State Farm's appeal on the coverage issue. The parties have agreed that the damages sustained as a result of the death of Mrs. Bakken were in excess of *298 $30,000, and that if the appellate court sustains the trial court's partial summary judgment in favor of plaintiffs, the judgment against State Farm on the coverage claim will be in the amount of $15,000 plus interest.
State Farm urges that this case is governed by prior Arizona decisions holding that there are no statutory or public policy considerations which invalidate "other insurance" clauses in uninsured motorist coverage contained in motor vehicle liability policies. Thus, State Farm contends, since the two State Farm policies involved in this litigation both contained "other insurance" clauses, the uninsured motorist coverage from the two policies cannot be "stacked" to provide recovery in excess of the prescribed minimum statutory limit ($15,000) contracted for by the parties.
The "other insurance" clauses of the two policies are identical, and, as pertinent to the facts of this litigation, provide as follows:
"If There Is Other Coverage
* * * * * *
"2. If the insured is injured as a pedestrian ... and other uninsured motor vehicle coverage applies:
"a. the total limit of the liability shall not exceed the highest limit of liability of any one policy, and
"b. we are liable only for our share. Our share is that per cent of the damages that the limit of liability of this policy bears to the total of all uninsured motor vehicle coverage applicable to the accident."
The validity of "other insurance" clauses in policies providing uninsured motorist coverage has been repeatedly upheld in Arizona decisions. The claim in Transportation Ins. Co. v. Wade, 106 Ariz. 269, 475 P.2d 253 (1970), involved a wrongful death, as does this action. There, the decedent's administrator sought to have the cumulative benefit of the uninsured motorist coverages of both the decedent's policy and that of the driver of the car in which the decedent was a passenger. The administrator had already been paid the full amount of coverage under one of the policies. The Arizona Supreme Court noted that the purpose of Arizona's uninsured motorist statute was to establish a policy that the insured should be able to recover damages he or she would have been entitled to recover if the offending motorist had maintained a valid motor vehicle liability policy with statutory limits of coverage. The court then stated:
"Here, had the offending motorist carried insurance in accord with the Financial Responsibility Act, Wade would have recovered the same amount  $10,000  as he did here. The public policy as expressed in the statute has been satisfied and any `excess-escape clauses' applying to superfluous amounts of coverage fall in the area of contract law between the insuring parties and not in the realm of public interest."
106 Ariz. at 273, 475 P.2d 253.
In State Farm Mutual Auto. Ins. Co. v. Williams, 123 Ariz. 455, 600 P.2d 759 (App. 1979), the issue was whether an insurance company which had issued three separate automobile policies covering three separate automobiles owned by the insured was required to pay the maximum uninsured motorist coverage under each policy when the insured was injured while a passenger in a non-owned, uninsured vehicle. In a well-reasoned opinion the court held that the "other insurance" clauses in the policies were valid and prevented the stacking of benefits. In considering the contention that the insurer would receive a windfall because the insured had paid premiums for three separate policies, the court stated:
"This has great populist appeal, but overlooks what risk was being insured against and what the insurance contract provided. Under these policies, each automobile was insured and it is theoretically possible that at one given moment, all three vehicles could be operating and in three individual accidents, be struck by the three uninsured motorists. In such a case each operator would have $10,000 coverage under each policy. *299 This was the risk insured against and this is what the premium was paid for. Under the terms of the policy, the risk insured and the premium received was not to afford coverage of $30,000 for one accident."
123 Ariz. at 459, 600 P.2d 759.
As indicated by the Arizona Supreme Court in Transportation Ins. Co. v. Wade, supra, in response to a similar argument, it is not sheer speculation to conclude that the premiums paid on separate policies for uninsured motorist coverage reflect the limitations imposed by "other insurance" clauses. For other decisions involving Arizona law upholding the validity of "other insurance" clauses in uninsured motorist coverage situations, see McCarthy v. Preferred Risk Mutual Ins. Co., 454 F.2d 393 (9th Cir.1972); Hampton v. Allstate Ins. Co., 126 Ariz. 403, 616 P.2d 78 (App. 1980); State Farm Mutual Ins. Co. v. Superior Court, 15 Ariz. App. 3, 485 P.2d 593 (1971).
The plaintiffs seek to distinguish the above decisions on the basis that none of them involved different claimants demanding uninsured motorist coverage from their separate policies for damages which they each, as insureds under their own policies, had separately incurred as a result of the wrongful death of another. The essence of this argument is that the focus must be upon the plaintiffs themselves as the insureds, that their status as insureds in and of itself is sufficient to justify recovery, and that the insured status of the person receiving bodily injuries with resulting death is immaterial. From this premise they then urge that the "other insurance" clauses of the policies are simply inapplicable because no plaintiff insured was "injured as a pedestrian," but rather, each plaintiff insured was injured because of the wrongful death of another person.
No authority has been advanced by plaintiffs for the proposition that the uninsured motorist provisions were intended to require coverage to an insured for damages resulting from the wrongful death of another person, separate and apart from the coverage provided when the decedent was himself an insured under the policy. For reasons hereinafter set forth, we reject plaintiffs' contention and hold that Arizona's statutory provisions (and the provisions of the policies involved in this case) require coverage only for damages resulting from bodily injury, including death, of an insured and that in interpreting both the statutory and policy provisions relating to the amount of damages recoverable, the focus must be upon the bodily injury (including death) to that insured. As so interpreted, the other insurance clauses of the policies under consideration are clearly applicable, and require that the judgment entered in this case be reversed.
A simple illustration demonstrates the invalidity of plaintiffs' contentions that it is their status as insureds that provides their entitlement to damages, rather than the status of the decedent as an insured. At the time of her death, Mrs. Bakken was survived by seven children and her spouse. Assume, for purposes of illustration, that each of these children and her husband owned automobiles covered by separate State Farm policies with uninsured motorist coverage and, further, that at the time of her accident she was not living in the same household with her spouse or any of her children. Under such circumstances she would not have any connection with any of the policies and clearly would not have been an insured under them. Consequently, there would not have been any uninsured motorist coverage available for the damages resulting from her devastating bodily injuries. However, under plaintiffs' interpretation, if she were to then die as a result of her bodily injuries, suddenly there would spring into existence uninsured motorist coverage under each of the eight policies. This coverage would exist under each policy (since each insured under the separate policies would have suffered wrongful death damages) with a possible total coverage of $105,000. Under plaintiffs' theory, the "other insurance" clauses in the policies would not be applicable because none of the insureds were "injured as a pedestrian," only Mrs. Bakken, a noninsured, *300 received such injuries. Such a result would be patently absurd in the context of statutorily mandated uninsured motorist coverage.
At the time of the accident, A.R.S. § 20-259.01 required that an insurer provide uninsured motorist coverage in a motor vehicle liability policy "for the protection of persons insured [thereunder] who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury ... including death, resulting therefrom." A.R.S. § 20-259.01 as amended Laws 1972, ch. 157, § 1. The coverage must be provided "in limits for bodily injury or death set forth in § 28-1142." A.R.S. § 28-1142 provides a "limit ... of not less than fifteen thousand dollars because of bodily injury to or death of one person in any one accident and ... of not less than thirty thousand dollars because of bodily injury to or death of two or more persons in any one accident...."
The policy provisions in this case substantially track the above statutory requirements. Coverage is provided for "damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle." The policy coverage is limited to $15,000 "for all damages due to bodily injury to one person" in each accident, and $30,000 coverage "for all damages due to bodily injury to two or more persons in the same accident." The policy defines "bodily injury" as including death which results from bodily injury.
Under both the statutory and policy language quoted above, there is no coverage provided to the plaintiffs in their capacity as insureds because of some injury which they themselves might have received resulting from Mrs. Bakken's death. Whatever their injuries might be, they were not "bodily injuries." The coverage provided is for the "bodily injury" which another insured, Mrs. Bakken, received. The mere fact that plaintiffs might, by reason of Arizona's wrongful death act, be entitled to share in the proceeds of the coverage for bodily injury to another insured,[1] does not operate to expand the limits of coverage provided by the policies, which fully comply with the requirements of A.R.S. § 20-259.01.
The contention that in wrongful death claims under uninsured motorist coverage the focus must be solely on the status of the survivors as insureds, has been considered and rejected in LaFleur v. Fidelity and Casualty Co. of New York, 385 So.2d 1241 (La. App. 1980). LaFleur involved an action brought by three surviving children of a mother killed by an uninsured motorist. The three children had three separate policies of insurance issued by three different insurers. Each policy provided uninsured motorist coverage. However, the mother was not an insured under any of the policies. In two prior Louisiana decisions involving claims of uninsured motorist coverage by survivors, the courts had approached the question on the assumption that there was no coverage unless the deceased was an insured. Like plaintiffs in this case, the theory of the children in LaFleur was that their policies provided coverage to them in their own capacities as "insureds," and that they were entitled to recover their own damages resulting from the wrongful death of their mother, without regard to her status as an insured. Each of the three policies contained the following uninsured motorist coverage:
"TO PAY ALL SUMS WHICH THE INSURED OR HIS LEGAL REPRESENTATIVE SHALL BE LEGALLY ENTITLED TO RECOVER AS DAMAGES FROM THE OWNER OR OPERATOR OF AN UNINSURED AUTOMOBILE BECAUSE OF BODILY INJURY, SICKNESS OR DISEASE INCLUDING DEATH RESULTING THEREFROM, HEREINAFTER CALLED `BODILY INJURY', * * * CAUSED BY ACCIDENT AND ARISING OUT OF THE OWNERSHIP, MAINTENANCE OR USE OF SUCH UNINSURED AUTOMOBILE."

*301 385 So.2d at 1242 (La. App. 1980) (emphasis added).
The children relied upon the above-quoted policy provisions, and alternatively upon the provisions of LSA-R.S. 22:1406(D) which provide as follows:
"(1)(a) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the Commissioner of Insurance, for the protection of persons insured thereunder, who are legally entitled to recover damages from owners or operators of uninsured or under insured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing the coverage or selects lower limits ..." 385 So.2d at 1244-45 (emphasis added).
The LaFleur court rejected the children's contention that their status as insureds under their policies was sufficient in itself to entitle them to recover their damages resulting from the wrongful death of their mother under the uninsured motorist coverage of the policies. The essence of the court's opinion was that the sine qua non for recovery of such damages under either the policies or the statutory provisions was the showing of the death of an insured under the policies. In rejecting coverage, the court stated:
"We believe that the clear language of the policies in question excludes coverage for the plaintiffs. The language of the policies is clear and unambiguous and does not lead to any absurd consequences.
* * * * * *
"We are likewise of the belief that the Louisiana Legislature did not intend for the statutory language contained in LSA-R.S. 22:1406(D)1(a) to afford coverage for what an insured may be legally entitled to recover as his `wrongful death' damages, sustained because of the death of some third person." 385 So.2d at 1244-45 (emphasis added).
In Lopez v. State Farm Fire & Casualty Co., 250 Cal. App.2d 210, 58 Cal. Rptr. 243 (1967), while only one policy was involved, the four plaintiffs used arguments remarkably similar to the theory urged by plaintiffs in this case. The surviving plaintiffs were all "insureds" under the policy, and they argued that in light of the wrongful death statute, each of them in an individual capacity suffered injury by reason of the wrongful death of another insured, and that therefore the single injury limits of the policy should not apply. The court rejected this argument, holding that the plaintiffs' injuries were not "bodily injuries"[2] so as to justify an increase in coverage. See also, West American Insurance Co. v. Buchanan, 11 Wash. App. 823, 525 P.2d 831 (1974); Vanguard Ins. Co. v. Schabatka, 46 Cal. App.3d 887, 120 Cal. Rptr. 614 (1975).
As is evident from the LaFleur, Lopez and Buchanan cases, the status of plaintiffs as insureds under the policies here involved is not sufficient in and of itself to bring into existence coverage in any amount for their own damages incurred as a result of the wrongful death of a third party. Rather, coverage exists only because an insured has incurred bodily injury resulting in death, and the policy provisions must be interpreted from that perspective.[3] When so viewed, the "other *302 insurance" clauses of the policies are clearly applicable, and plaintiffs' attempts to distinguish the prior Arizona decisions upholding the validity and applicability of "other insurance" clauses must fail.
Here, under the "other insurance" clauses, Mrs. Bakken (and not the plaintiffs) was the "insured" and it is undisputed that she was injured as a pedestrian. Had she not died from the injuries she received at the hands of the uninsured motorist, it is clear that, because of the other insurance clause, her recovery for her own bodily injuries under the two policies would be limited to the sum of $15,000. This limitation would exist regardless of whether her medical and related bills greatly exceeded the $15,000 limit. Given these facts, we find it difficult to accept plaintiffs' contention that the parties intended to limit the stacking of insurance coverage in the case where an insured lives, yet allow the stacking of insurance coverage for the benefit of the wrongful death claimants when an insured dies from the injuries sustained by the wrongful act of an uninsured motorist.
Plaintiffs' reliance on Porter v. Empire Fire & Marine Ins. Co., 106 Ariz. 274, 475 P.2d 258 (1970) is misplaced. Unlike in Porter, the plaintiffs in this case have received exactly what they would have obtained had their insured, Mrs. Bakken, been hit by a motorist carrying the minimum amounts of insurance required by Arizona's Financial Responsibility Act. That is all that is required by Arizona's uninsured motorist statutes and the policies involved in this litigation. The fact that plaintiffs paid separate premiums for the two policies is likewise immaterial. Similar arguments have been considered and rejected in Transportation Ins. Co. v. Wade, supra, and State Farm Mutual Auto. Ins. Co. v. Williams, supra. In view of the plain and unambiguous provisions of the policies, the plaintiffs did not by their purchase of separate policies acquire the right to "stack" the policy proceeds from two different policies for one "bodily injury."
As an additional contention, plaintiffs urge that State Farm should somehow be estopped from arguing the relevance of the "other insurance" clauses in the two policies. This contention has no merit. The trial court's partial summary judgment in favor of plaintiffs was not based upon any concept of estoppel, but rather upon the trial court's finding that the "other insurance" clauses were inapplicable. Additionally, the facts clearly would not support an estoppel. Plaintiffs' claim of estoppel appears to be based upon some contention that they were unaware of State Farm's reliance on the "other insurance" clause because at the time State Farm sent its check in the amount of $15,000 to plaintiff Emil Bakken, State Farm referred only to the Emil Bakken policy, and purported to make payment to the full extent of coverage under that policy. It is difficult to understand how plaintiffs can advance such a contention on the record before the court. Initially, we note that in plaintiffs' counsel's demand letter to State Farm prior to receipt of any payment, plaintiffs' counsel states:
"As the Hurt case makes clear, there are multiple claimants for damages as a result of the death of Julia Bakken. Since there are multiple claimants, the `other insurance' clause  which provided the basis for the appellate court's decision in the Williams case, that you asked us to consider  is not applicable in this case."
(Emphasis added).
Additionally, in State Farm's letter transmitting the $15,000 check to plaintiffs' counsel, State Farm's reliance on the "other insurance" clauses as the basis for its refusal to make payment of the full coverage under both policies is made clear by its express reference to the "other insurance" holding of this court in State Farm Mutual Auto. Ins. Co. v. Williams, supra:

*303 "The cases you cite are not pertinent to the questions at hand. The State Farm Mutual Automobile Insurance Company vs. Cameron B. Williams is the case that is applicable."
The fact that, as a bookkeeping matter, State Farm did not actually prorate the payment equally against both policies at the time of payment is immaterial insofar as concerns plaintiffs' rights. There was no necessity under the other insurance clauses that such proration ever occur. Plaintiffs were entitled to receive a total of $15,000, the exact amount they received. That payment was made to the surviving spouse, as specifically authorized by the terms of the policies.[4] We further note that plaintiffs have failed to show any prejudice resulting from the claimed misconduct of State Farm. The estoppel claim is without factual support in the record, and does not merit further discussion.
The judgment entered by the trial court is reversed. The matter is remanded with directions to grant judgment in favor of State Farm on both claims urged in the complaint, and to grant State Farm its attorney's fees as requested in its motion for summary judgment, in an amount to be determined by the trial court after appropriate proceedings.
EUBANK and MEYERSON, JJ., concur.
NOTES
[1] See Williams v. Williams, 23 Ariz. App. 191, 531 P.2d 924 (1975).
[2] As in this case, the policy defined "bodily injury" as including death resulting therefrom.
[3] The plaintiffs' right to recover their share of policy proceeds resulting from the death of Mrs. Bakken is not even dependent upon their prior status as insureds. Under the definitions set forth in the uninsured motorist provisions of the policies, "any person entitled to recover damages by reason of bodily injury [including death] to an insured" becomes, at that point, an insured entitled to recover such damages. See, e.g., Transnational Ins. Co. v. Simmons, 19 Ariz. App. 354, 507 P.2d 693 (1973).
[4] Under the uninsured motorist coverage provisions, the policy provides under "payment of any amount due":

"We will pay any amount due:
"1. to the insured;
"2. to a parent or guardian if the insured is a minor or an incompetent person;
"3. to the surviving spouse; or
"4. at our option, to a person authorized by law to receive such payment." (Emphasis in original).