Daniel Wayne LAMBERT, by his Next
Friend, Rhonda L. Lambert COBB,
Plaintiff–Respondent,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
Defendant–Appellant.

No. 17313.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 29, 1991.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 19, 1991.

Application to Transfer Denied
Jan. 28, 1992.

Douglas R. Kennedy, Kennedy & Kenne-
dy, Poplar Bluff, for plaintiff-respondent.

Matthew R. Shetley, Wendell W. Crow,
Crow, Reynolds & Preyer, Kennett, for de-
fendant-appellant.

PREWITT, Presiding Judge.

Plaintiff alleged that defendant was lia-
ble under uninsured motorist coverage,
contained in three automobile insurance
policies, for damages plaintiff sustained by
the death of his father. Following jury
trial judgment was entered in favor of
plaintiff for $30,000. Defendant appeals,
contending there is no coverage under its
policy applicable to the death of plaintiff's
father.

Plaintiff is the sole surviving child of
decedent Michael Cobb. Plaintiff was born
on August 20, 1983. His parents were not
married at that time. Since his birth plain-
tiff has lived at the home of his maternal
grandparents Ronnie Lambert and Bonnie
Lambert. On April 30, 1988, plaintiff's fa-
ther sustained fatal injuries in a one-car
collision. The driver of the vehicle was
uninsured. At the time of the collision
plaintiff's mother and father were living in
a trailer, apart from the Lambert house-
hold.

Defendant issued three policies of auto-
mobile insurance to persons living in the

Lambert house, each pertaining to a different vehicle. Two policies were issued to Ronnie Lambert and Bonnie Lambert. The third policy was issued to Bonnie Lambert and Glen Lambert, the son of Ronnie and Bonnie Lambert. Each of the policies was in effect on April 30, 1988, and provided uninsured motorist coverage. The policies provided in part:

> "UNINSURED MOTOR VEHICLE— COVERAGE U"
>
> \*   \*   \*   \*   \*   \*
>
> "We will pay damages for **bodily injury** an **insured** is legally entitled to collect from the owner or driver of an **uninsured motor vehicle.** The **bodily injury** must be caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle."
>
> \*   \*   \*   \*   \*   \*
>
> **"Who is an Insured**
>
> **Insured**—means the **person** or **persons** covered by uninsured motor vehicle or underinsured motor vehicle coverages. This is:
>
>    1. the first **person** named in the declarations;
>
>    2. his or her **spouse**;
>
>    3. their **relatives**; and...."

The policy also contained definitions applicable to the uninsured motorist coverage:

> **"Bodily Injury**—means bodily injury to a **person** and sickness, disease or death which results from it."
>
> **"Insured**—means the **person, persons** or organization defined as **insureds** in the specific coverage."
>
> **"Person**—means a human being."
>
> **"Relative**—means a **person** related to **you** or **your spouse** by blood, marriage or adoption who lives with **you.** ...."
>
> **"You** or **Your**—means the named insured or named insureds shown on the declarations page."

Defendant argues that because the decedent was not eligible to recover under uninsured motorist coverage for his injuries,

plaintiff cannot do so. It asserts that for there to be coverage under the policy the person injured or killed must be an insured. Defendant cites numerous cases from other jurisdictions supporting this position, but they turn on contract or statutory language not present here.

Among the many cases cited by defendant are three from Louisiana, *Spurlock v. Prudential Ins. Co.*, 448 So.2d 218 (La. App.1984); *LaFleur v. Fidelity & Cas. Co. of New York*, 385 So.2d 1241, 1242 (La. App.1980), and *Chapman v. Allstate Ins. Co.*, 306 So.2d 414 (La.App.1975). It is sufficient, although there may be other bases, to distinguish *Spurlock* and *LaFleur* because in those cases recovery was limited to bodily injury sustained by an insured. *Spurlock*, 448 So.2d at 219; *LaFleur*, 385 So.2d at 1245. In *Chapman*, the issue was whether the decedent was an insured by being a member of plaintiff's household. 306 So.2d at 415.

Likewise, the policy and statute in *Bakken v. State Farm Mut. Auto. Ins. Co.*, 139 Ariz. 296, 678 P.2d 481 (Ct.App.1983), limits coverage to bodily injuries sustained by an insured. 678 P.2d at 484. The policy here does not limit bodily injury to an insured and by definition "bodily injury" includes "death which results from it".

What the drafter of this policy or of the statutes in Louisiana, Arizona, or elsewhere intended is immaterial. Rules of statutory and contract construction are not used when language is unambiguous. *American Family Mutual Ins. Co. v. Ward*, 789 S.W.2d 791, 795 (Mo. banc 1990).

Defendant also contends the parties "did not have any reasonable expectations that coverage would extend to the plaintiff for any derivative claim arising from the death of plaintiff's father." Assuming, but not deciding, that the reasonable expectation doctrine might be raised by an insurance company, based on decisions of the highest court of this state, it is not applicable here.[1]

---

**1.** The justifications for protecting reasonable expectations indicate that the doctrine is only applicable to protect an insured or beneficiary of an insurance contract. See Keeton and Widiss, *Insurance Law*, § 6.3 at 634–636 (1988).

■ The "reasonable expectation rule of construction" has been described as providing that "the objective reasonable expectations of adherents and beneficiaries to insurance contracts will be honored even though a thorough study of the policy provisions would have negated these expectations." *Robin v. Blue Cross Hospital Service, Inc.*, 637 S.W.2d 695, 697 (Mo. banc 1982).

The "reasonable expectations doctrine" requires that there be a contract of adhesion and ambiguity in the policy language. *Rodriguez v. General Acc. Ins. Co.*, 808 S.W.2d 379, 382 (Mo. banc 1991). It could be argued that requiring an ambiguity before applying this doctrine is inconsistent with the definition of the doctrine as it applies even when "a thorough study of the policy provisions would have negated these expectations." *Robin*, 637 S.W.2d at 697.

Requiring an ambiguity might also be at odds with the reason for the doctrine, to make it unnecessary for courts to find ambiguities when none exist in order to reach the desired result. Keeton and Widiss, *Insurance Law*, § 6.3(a) at 627–632 (1989). Nevertheless, the requirement of an ambiguity is clearly stated by the Supreme Court of Missouri and its decisions are "controlling" on this court. Mo. Const. art. V, § 2; *Estate of Seabaugh*, 654 S.W.2d 948, 957 (Mo.App.1983).

"[W]here insurance policies are unambiguous, they will be enforced as written absent a statute or public policy requiring coverage." *Rodriguez*, 808 S.W.2d at 382. "An ambiguity arises when there is duplicity, indistinctness, or an uncertainty in the meaning of the words used in the contract." *Id.* There is no ambiguity in the relevant policy language.

■ As a relative who lives with the named insured, plaintiff is an insured under the policy. As an insured he is entitled to recover damages for bodily injury or death caused by an owner or driver of an uninsured motor vehicle. Although some persons may not have known there was such coverage, it is logical to assume that those who draft insurance policies know what is to be covered, who is to be protected from losses and who may recover damages. At least this would appear true where the language clearly states that coverage.

Obviously, the policy was not intended to provide uninsured motorist coverage for all relatives, but it provides coverage for relatives who live in the named insured's household for damage they sustain from the death of another such as a father. Whether this type of coverage is not statutorily required is immaterial. The coverage was provided and there is no contention that it is prohibited by statute or against public policy.

The judgment is affirmed.

CROW and PARRISH, JJ., concur.