703 P.2d 522

**Dale A. COLE and Julie Ann Cole, husband and wife, Plaintiffs/Appellants,**

**v.**

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a corporation, Defendant/Appellee.**

**No. 2 CA–CIV 5198.**

Court of Appeals of Arizona, Division 2, Department A.

March 21, 1985.

Review Denied June 6, 1985.

Les Gilbertson, Tucson, for plaintiffs/appellants.

Fish, Duffield, Miller, Young, Adamson & Alfred, P.C. by Arthur H. Miller, Tucson, for defendant/appellee.

## OPINION

HOWARD, Judge.

This is an appeal from a granting of a summary judgment. On February 13,

1982, plaintiff Julie Cole suffered severe injuries in a two-vehicle automobile collision. She was a passenger in a car owned and operated by Eva Barringer and insured by Mid-Century Insurance Company (Farmers) with liability coverage in the amount of $15,000. The second vehicle was insured by Allstate with a $50,000 liability limit.

Cole's damages from her injuries exceeded the liability limits of both the Farmers and the Allstate policies. She collected $50,000 from Allstate. Burr Udall, the attorney for Farmers, initially wrote to Cole's attorney five months after the accident, offering to settle for $14,500. Mr. Udall also stated in his letter that the Farmers insurance policy did not provide underinsurance coverage. However, Farmers eventually settled with Cole for $30,000, $15,000 more than the limits of its liability insurance. Mr. Udall, in his deposition, explained the source of the additional $15,000. He described two approaches which Arizona insurance companies adopted in order to comply with the underinsurance provisions of the 1981 amendment to A.R.S. § 20–259.01. Some companies interpreted the statute to mean that they were required to offer underinsured motorist coverage at such time as the policy came up for renewal or when a new policy was issued after the effective date of the statute. Other companies, Farmers being one, elected to "roll on" underinsurance coverage on all policies in effect at the date the statute became effective. That is, Farmers considered that all policy holders automatically had underinsurance motorist coverage as of the effective date of the statute, but they did not attempt to collect any additional premiums at that time; when the policy came up for renewal, they would then inform the policy holder that underinsurance motorist coverage was available at an additional premium.

Eva Barringer's policy had been issued for a six-month policy term which expired on July 13, 1981. It was renewed before July 13, 1981, before the effective date of the statute, July 25, 1981.

When Eva Barringer renewed her policy in July 1981, she asked to make monthly premium payments, and her policy was amended to provide for coverage from month to month, as long as a monthly premium was paid. Farmers had geared up to advise policy holders that they could obtain underinsurance motorist coverage, for an additional premium, when the policy holder's policy came up for renewal on a semi-annual or annual basis. Since Barringer had switched to paying monthly premiums, Farmers, prior to the accident involving Julie Cole, never advised Barringer that the underinsured motorist coverage was available for an additional premium.

After sending the letter dated July 2, 1982, Mr. Udall learned that Farmers would provide underinsurance motorist coverage under its policy issued to Barringer. Farmers then offered to settle for the sum of $30,000, which offer was accepted by Cole. A copy of the Farmers settlement draft shows that $15,000 of the amount was paid under Farmers' underinsured motorist coverage.

After settling with Farmers and Allstate, Cole went to her own insurer, State Farm Mutual Insurance Company (State Farm) and demanded the sum of $15,000 under her underinsurance coverage. State Farm refused Cole's claim on the ground that Cole had received $15,000 underinsurance coverage from Farmers and State Farm's policy provided that its underinsurance applies as excess to any primary underinsurance coverage and only in the amount by which it exceeds the primary insurance coverage.

A.R.S. § 20–259.01 was amended in 1981 to read, in part, as follows:

"§ 20–259.01. Uninsured motorists; coverage; definitions; exceptions

A. No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle, shall be delivered or issued for delivery in this state, with respect to any

motor vehicle registered or principally garaged in this state, unless coverage is provided in the policy or supplemental to the policy, in limits for bodily injury or death prescribed in subsections B and C of this section, but not less than the limits prescribed in § 28–1102, under provisions filed with and approved by the insurance director, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured *and underinsured* motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom. For the purposes of the coverage provided for pursuant to this section, 'uninsured motor vehicles', subject to the terms and conditions of such coverage, includes any insured motor vehicle if the liability insurer of the vehicle is unable to make payment on the liability of its insured, within the limits of the coverage, because of insolvency.

B. Every insurer writing automobile liability or motor vehicle liability policies, as provided in subsection A of this section shall also make available to the named insured thereunder, and by written notice offer the insured and at the request of the insured shall include within the policy uninsured motorist coverage which extends to and covers all persons insured under the policy, in limits not less than the liability limits for bodily injury or death contained within the policy.

C. Every insurer writing automobile liability or motor vehicle liability policies, as provided in subsection A of this section shall also make available to the named insured thereunder and shall by written notice offer the insured and at the request of the insured shall include within the policy underinsurance motorist coverage which extends to and covers all persons insured under the policy, in limits not less than the liability limits for bodily injury or death contained within the policy. * * * " 1981 Ariz.Sess.Laws 732. (Emphasis added)

Cole contends the amendment made underinsurance coverage mandatory. State Farm contends that the statute made it optional. We agree with Cole. It was mandatory.

■ Paragraph A of the statute makes it mandatory to provide both uninsured and underinsured motorist coverage in at least the amount of the statutory minimum for liability insurance, to-wit, $15,000 each person and $30,000 each accident. Prior to the 1981 amendment the court in *Shaffer v. Southern Union Gas Co.*, 112 Ariz. 145, 539 P.2d 902 (1975) noted that the statute mandated uninsured motorist coverage. All the 1981 amendment did was to add underinsurance coverage, and its addition to paragraph A put underinsurance coverage on the same level with uninsured motorist coverage. We note that paragraph A was amended in 1982 by deleting the words "and underinsured." Thus underinsured motorist coverage is now no longer mandatory.

State Farm argues that the language of paragraph C shows that the coverage is optional. We do not agree. Paragraph C allows the insured to purchase underinsurance motorist coverage over and above the statutory minimum. It permits the insured to purchase this underinsurance coverage in a sum not less than the limits of liability insurance that is contained in the policy. In other words, if the insured desires liability limits in the sum of $50,000 each person and $100,000 each accident, he is also entitled to purchase underinsured motorist coverage in the same amounts.

■ Having decided that the underinsured coverage was mandatory when the accident occured, it does not necessarily follow that State Farm's "other insurance" clause violates Arizona public policy. "Other insurance" clauses have been held not to be against public policy when dealing with the mandatory uninsured motorist coverage. See *Bakken v. State Farm Mutual Auto Insurance Co.*, 139 Ariz. 296, 678 P.2d 481 (1983). See also *Transportation Insurance Co. v. Wade*, 106 Ariz. 269, 475 P.2d 253 (1970). The public policy ex-

pressed in the 1981 amendment was to provide for those situations in which the offending motorist did not carry enough coverage to pay the damages incurred by the injured party. The public policy of the state was to provide an amount, not less than $15,000, in addition to the liability coverage carried by the offending party. Since the additional amount was provided here by Farmers' policy, the public policy as expressed in the statute has been satisfied and any excess-escape clauses applying to superfluous amounts of coverage fall in the area of contract law between the insuring parties and not in the realm of public interest. See *Transportation Insurance Co. v. Wade*, supra.

Cole argues that, in any event, summary judgment could not be entered in favor of State Farm since there remained a factual issue as to what was the exact nature of the $15,000 over and above Farmers' liability limits which was paid to Cole. We do not agree. The deposition of Burr Udall makes it clear that Farmers extended underinsured motorist coverage to Cole and that the extra $15,000 represented this coverage. Cole has not suggested what else the $15,000 could represent nor did Cole present to the trial court in the motion for summary judgment any evidence which would suggest that the $15,000 was anything other than a payment of underinsurance coverage.

Affirmed.

BIRDSALL, P.J., and FERNANDEZ, J., concur.