714 P.2d 441

**Paul MASON and Cynthia Mason, his wife, Plaintiffs-Appellants,**

**v.**

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a corporation, Defendant-Appellee.**

**No. 1 CA–CIV 7290.**

Court of Appeals of Arizona, Division 1, Department B.

Sept. 19, 1985.

Review Denied Feb. 19, 1986.

G. David Gage, Ltd. by G. David Gage, Phoenix, for plaintiffs-appellants.

Toci, Murphy & Beck by Michael R. Murphy, Prescott, for defendant-appellee.

## OPINION

JACOBSON, Judge.

The sole issue on appeal is the validity of the so-called "owned but uninsured" exclusion clause contained in an underinsured motorist endorsement to an automobile liability policy.

The stipulated facts giving rise to this inquiry are that on September 6, 1982, Paul Mason, while operating his 1969 Honda motorcycle was involved in an accident with an automobile driven by Henry Echer. Echer was at fault.

At the time of the accident the insurance picture was that Echer was insured for liability with Allstate Insurance Company with liability limits of $25,000. Mason had two insurance policies: one issued by Puritan Insurance Company covering the 1969 Honda motorcycle and one issued by State Farm covering a 1979 Chevrolet Van. Both the Puritan policy and the State Farm policy contained "underinsured motorist" coverage—$15,000 under the Puritan policy and $50,000 under the State Farm policy.

As a result of the accident, Echer's insurer, Allstate, paid Mason its complete policy

limits in the sum of $25,000. In addition, Puritan under its underinsured motorist coverage paid Mason its complete policy limits of $15,000.

State Farm refused to pay Mason under its underinsured motorist coverage based upon the following exclusion:

When coverage W [underinsured motorist coverage] does not apply THERE IS NO COVERAGE:

2. For *BODILY INJURY* to any *INSURED:*

a. While *OCCUPYING,* or

b. Through being struck by a motor vehicle owned by *YOU, YOUR SPOUSE* or any *RELATIVE* if it is not insured for this coverage under this policy. (emphasis original.)

At the time the parties stipulated to these facts they contemplated filing cross-motions for summary judgment raising only the issue of whether the above quoted exclusion (hereinafter referred to as the "owned but uninsured" exclusion), was void as repugnant to the public policy of Arizona as expressed in A.R.S. § 20-259.-01. After State Farm had filed its motion for summary judgment based upon the stipulated facts, Mason filed an affidavit stating that a State Farm agent, Cecila Raak, did not inform the Mason's of any policy exception at the time the policy was purchased, and that after the accident, Raak told the Masons that they "should be able to get State Farm underinsurance motorist coverage." Raak subsequently filed an affidavit denying she made these statements.

At the time the Masons purchased the State Farm policy they were given a sales brochure. The Masons contend that this brochure [1] led them to believe that there would be coverage from the State Farm policy on their Van for Mr. Mason's use of his Honda motorcycle which was insured by another company.

1. The Masons did not receive a copy of the State Farm policy until after the accident involved

here.

The trial court granted summary judgment in favor of State Farm and Mason has appealed raising the following issues:

1. Whether the Masons have additional underinsured coverage based upon their "reasonable expectations."

2. Whether the State Farm brochure constitutes the policy and provides coverage.

3. Whether the "owned but uninsured" exclusion is void as being against public policy.

## REASONABLE EXPECTATIONS

Mason first asserts that he had a "reasonable expectation" that the coverage he purchased in connection with his Chevrolet Van applied with equal force while operating his Honda motorcycle. The doctrine of reasonable expectations has most recently found expression in the decision of *Darner Motor Sales v. Universal Underwriters*, 140 Ariz. 383, 682 P.2d 388 (1984), where the Supreme Court held that when an expectation has "been induced by the making of a promise", 140 Ariz. at 390, 682 P.2d at 395, the trier of fact may have to resolve questions of fact concerning what the parties did, said and intended, regardless of the written agreement between the parties.

■ Here, neither the stipulated facts nor those alleged by affidavit indicate that the State Farm agent "promised" the Masons that if they received injuries while driving a vehicle other than the Chevrolet Van, the underinsured motorist protection afforded under the State Farm policy would apply. The most that can be said is that they were not told that the coverage would not apply. In our opinion, this does not give rise to a promise, unless the Masons were reasonably led to believe that in the absence of such a disavowal, coverage would be afforded to owned but not insured vehicles.

## COVERAGE BASED ON THE BROCHURE

We thus turn to the Masons' argument that the brochure they received not only reasonably induced the belief that underinsured coverage would be afforded them while operating other uninsured vehicles, but that, in fact, such brochure actually provided that very coverage.

The Masons point to the provision in the brochure which provides that the policy:

pays for bodily injury damages to an insured caused by an accident and arising out of the maintenance or use of an at-fault underinsured motor vehicle.

However the folder, also in equally clear language warns the reader that "this folder contains only a general description of acceptable coverage and is not a statement of contract." Moreover, the first item in the brochure is the statement:

WHAT DRIVER AND CARS ARE COVERED?

You, your spouse and all relatives ... living in your household and any other person who is driving with your consent ...:

1. Your car (the car described in the policy)....

■ We hold, as a matter of law, that any reasonable person who read the brochure could not entertain a reasonable belief that the underinsured motorist protection applied if the driver was operating a vehicle not named in the policy (or fell within the other situations described in the brochure, none of which are applicable here).

We therefore hold that neither the doctrine of reasonable expectation nor the brochure invalidated the "owned but uninsured" exclusion under consideration.

## PUBLIC POLICY ARGUMENT

The Masons' main contention on appeal is that the "owned but uninsured" exclusion is contrary to the public policy of the State of Arizona as expressed in A.R.S. § 20–259.01(C) and how that public policy has been interpreted in the recent case of *Calvert v. Farmers Ins. Co. of America*, 144 Ariz. 291, 697 P.2d 684 (1985).

Arizona Revised Statutes § 20–259.01(C) provides:

Every insurer writing automobile liability or motor vehicle liability policies, as provided in subsection A of this section shall also make available to the named insured thereunder and shall by written notice offer the insured and at the request of the insured shall include within the policy underinsurance motorist coverage which extends to and covers all persons insured under the policy, in limits not less than the liability limits for bodily injury or death contained within the policy....

Underinsured motorist coverage, has been defined by A.R.S. § 20–259.01(E) as follows:

'Underinsurance motorist coverage' includes coverage for a person if the sum of the limits of liability under all bodily injury or death liability bonds and liability insurance policies applicable at the time of the accident is less than the total damages for bodily injury or death resulting from the accident. To the extent that the total damages exceed the total applicable liability limits, the underinsurance motorist coverage provided in subsection C of this section is applicable to the difference.

The Masons' public policy argument is that the "owned but uninsured" exclusion is void because nothing in A.R.S. § 20–259.01(C), which requires the insurer to offer underinsurance coverage, is conditioned upon the insured being in the vehicle that is named in the policy. Mason argues that, therefore, coverage extends to "persons", not vehicles.

■ In our opinion such an interpretation of the legislative action is too broad. The Arizona legislature wanted to provide the opportunity to its citizens to purchase insurance in order to be protected against the tortfeasor/motorist who had purchased inadequate coverage[2]. It does not follow that insurance companies cannot limit that coverage to specific risks and exclude other risks. In other words, in our opinion, the statute was adopted on the assumption that it referred to policies purchased for a specific vehicle. The statutes themselves require no contrary inference. Absent an ascertainable contrary public policy, parties should be free to contract as they wish. *Mountain States Bolt, Nut & Screw Co. v. Best-Way Transp.*, 116 Ariz. 123, 568 P.2d 430 (App.1977).

We know that in the area of uninsured motorist coverage the "... statute establishes a public policy that every insured is entitled to recover damages he or she would have been able to recover if the uninsured had maintained a policy of liability insurance in a solvent company." *Calvert v. Farmers Ins. Co.*, 144 Ariz. at 294, 697 P.2d at 687. This public policy is predicated upon a determination that "... every policy issued have at least the minimum limits for uninsured motorist protection" in order "to afford protection to victims of financially irresponsible drivers." *Id.*

These expressed concerns which give rise to the policy determinations were completely met in this case. The negligent driver (Echer) was not a financially irresponsible driver, but rather had completely complied with the legislative mandates and provided more than the "minimum" insurance required. This sum was paid to Mason. In addition, Mason took advantage of what the legislature had provided, by collecting underinsurance from the carrier from whom he purchased said coverage.

■ Under these circumstances, we can conceive of no legal or public policy basis for prohibiting the insurer from limiting the risk it assumed to the vehicles it insured[3], and for which it received a premium.

---

2. We assume that the requirement for minimum insurance coverage (in this State $15,000 per person and $30,000 per occurrence, *see* A.R.S. § 28–1102), is a trade off by providing at least some protection to all motorists, while not placing the cost of such insurance beyond the reach of the average motorists.

3. We take judicial notice that in an accident, there is a greater possibility of serious bodily injury occurring to a driver of a motorcycle as compared to that of an automobile. State Farm agreed to pay underinsurance when Mason was in his Chevrolet Van, not his Honda motorcycle. Mason should not be able to unilaterally change

A similar result was reached by Division 2 of this court in *Cole v. State Farm Mut. Auto Ins.*, 145 Ariz. 578, 703 P.2d 522, (1985), *petition for review denied*, 18125–PR (AZ. June 4, 1985). *Cole* dealt with "other insurance" clauses in determining underinsurance liability. While we may not agree with all the reasoning of that case, we do agree that if all the public policy considerations have been satisfied "any excess—escape clause applying to superfluous amounts of coverage fall in the area of contract law between the insuring parties and not in the realm of public interest. *See Transportation Ins. Co. v. Wade,* [106 Ariz. 269, 475 P.2d 253 (1970)]." *Id.* at 580, 703 P.2d at 524.

For the foregoing reasons the judgment of the trial court is affirmed.

KLEINSCHMIDT, P.J., and GREER, J., concur.

that risk contrary to the "reasonable expectations" of the insurer.