742 P.2d 1372

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff-Counterdefendant-Appellant,**

**v.**

**Arlo JANSSEN and Ofelia Janssen, husband and wife, Defendants-Counterclaimants-Appellees.**

**No. 1 CA–CIV 9061.**

Court of Appeals of Arizona, Division 1, Department C.

May 21, 1987.

Jones, Skelton & Hochuli by Nicholas T. Adrahtas, Mark D. Zukowski, Phoenix, for plaintiff-counterdefendant-appellant.

Marton & Hall by Terry F. Hall, Phoenix, for defendants-counterclaimants-appellees.

## OPINION

DONALD R. KUNZ, Judge Pro Tem.*

In this appeal, appellant State Farm Mutual Automobile Insurance Company (State Farm) challenges the trial court's ruling on cross-motions for summary judgment. The trial court ruled that appellees Arlo and Ofelia Janssen, who were injured by an uninsured driver while traveling in their 1977 Datsun, were entitled to recover under the $100,000/$300,000 uninsured motorist (UM) coverage in a separate State Farm policy on the Janssens' other car, a 1973 Volkswagen. State Farm also contests the trial court's determination that it would not be legally entitled to seek a contractual subrogation recovery against persons or entities, other than the uninsured driver, who might be liable in damages for the Janssens' personal injuries.

The parties raise the following issues on appeal: (1) whether A.R.S. § 20–259.01(F)

confers on the Janssens an absolute right to elect to resort to the $100,000/$300,000 UM coverage in the State Farm policy on their Volkswagen; (2) whether the "other owned vehicle" exclusion in State Farm's UM coverage on the Janssens' Volkswagen is invalid under *Calvert v. Farmers Ins. Co.*, 144 Ariz. 291, 697 P.2d 684 (1985), despite the availability of $15,000/$30,000 UM coverage under the policy issued by State Farm on the Janssens' Datsun; and (3) whether State Farm may enforce the subrogation rights provided in its policies to the extent the Janssens recover personal injury damages against any persons or entities other than the uninsured driver. We have jurisdiction pursuant to A.R.S. § 12–2101(B).

The facts are undisputed. The Janssens owned a 1977 Datsun and a 1973 Volkswagen. Each automobile was covered by a separate automobile liability policy issued by State Farm. Appellee Arlo Janssen was the named insured under both policies, the printed provisions of which are identical. The policy covering the Datsun provided UM coverage limits of $15,000/$30,000. The policy covering the Volkswagen provided UM coverage limits of $100,000/$300,000. Both policies contained the following provisions:

SECTION III—UNINSURED MOTOR VEHICLE COVERAGE U

....

THERE IS NO COVERAGE:

....

2. FOR BODILY INJURY TO AN INSURED:

   a. While *occupying* or

   b. Through being struck by a motor vehicle owned by *you, your spouse,* or *any relative* if it is not insured for this coverage under this policy.

The policies also provided:

CONDITIONS

....

3. OUR RIGHT TO RECOVER OUR PAYMENTS

....

---

* Donald R. Kunz was authorized to participate in this case by the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. Art. VI, § 3 and A.R.S. §§ 12–145 to –147.

b. Under uninsured motor vehicle coverage:

1. We are subrogated to the extent of our payments to the proceeds of any settlement the *injured person* recovers from any party liable for the *bodily injury.*

On August 11, 1984, while he was driving his 1977 Datsun, Arlo Janssen was injured in an accident caused by an uninsured driver. His wife, Ofelia, was then a passenger and she also was injured. As a result, the Janssens submitted a claim to State Farm in which they alleged they were entitled to recover damages under the $100,000/$300,000 UM coverage provided by the State Farm policy on the Janssens' 1973 Volkswagen.

In response, State Farm commenced this litigation seeking a declaration that the only applicable policy was the one on the Datsun involved in the accident and that the policy on the Volkswagen did not apply. The Janssens' answer denied the material allegations of State Farm's complaint and affirmatively alleged that they could elect to have the higher limits in the policy on the Volkswagen applied to their claims arising out of the accident in question. Their answer also contained a counterclaim, which alleged that they had a claim against other parties in addition to the uninsured driver, and which sought a declaration concerning whether State Farm had the right to reimbursement from any funds the Janssens might receive from any source other than the uninsured driver.

On cross-motions for summary judgment, the trial court ruled for the Janssens. Its formal judgment provided in pertinent part:

The court finds that the Arizona Supreme Court has declared other vehicle exclusion clauses invalid under *Calvert vs. Farmers Insurance Company of Arizona,* 144 Ariz. 291, 697 P.2d 684 (1984) [sic];

Further, the court finds that the Insurer's subrogation rights under A.R.S. § 20–259.01(G) are controlling over the policy provisions;

. . . .

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the State Farm Uninsured Motorist Coverage in the amount of $100,000 under policy number 1908967 specifically applies to Defendants, and the accident that occurred on or about August 11, 1984 and Defendants may therefore pursue their uninsured motorist claims thereunder;

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiff, State Farm Mutual Automobile Insurance Company, has subrogation rights for those amounts paid for Defendants' uninsured motorist claim against the uninsured motorist only, and not against any other person or entity who may be liable to Defendants for damages and injuries sustained in the auto accident which is the subject of the action. . . .

The judgment also awarded the Janssens $1,450 for attorney's fees under A.R.S. § 12–341.01. This timely appeal followed.

We first consider the Janssens' contention that the judgment must be upheld because, as a matter of law, the provisions of A.R.S. § 20–259.01(F) entitle them to resort to the $100,000/$300,000 UM coverage in the policy on their Volkswagen. Section 20–259.01(F) provides in part:

If multiple policies or coverages purchased by one insured on different vehicles apply to an accident or claim, the insurer may limit the coverage so that only one policy, selected by the *insured,* shall be applicable to any one accident.

(Emphasis added.) The Janssens' argument presupposes that the UM coverages in both State Farm policies apply in this case. However, the coverage in issue in this case is UM coverage and that coverage only. If multiple coverages of UM insurance "apply" in this case (which the statute quoted requires before the statute can have application), it is *Calvert* which would make that true. Thus, resolution of the question at hand cannot be achieved solely by applying the statute apart from the matters of public policy enunciated in *Calvert.* Accordingly, we find that *Calvert* is

dispositive, and we decline to construe § 20–259.01(F) upon the ground that such is unnecessary. If this case involved an attempt to "stack" the coverages of the two policies insuring the Janssens a different situation would be presented, but it is clear that "stacking" is not presented upon the record before us.

State Farm contends the trial court erred in holding that the "other vehicle" exclusion in State Farm's policy on the Janssens' Volkswagen was invalid under *Calvert v. Farmers Ins. Co.* State Farm observes that unlike the situation in the instant case, the vehicle involved in the accident in *Calvert* was not covered by any insurance policy. State Farm argues:

> The true holding in *Calvert* is that Arizona's Uninsured Motorist Act establishes a public policy that every insured is entitled to recover damages he or she would have been able to recover if the uninsured had maintained a policy of liability insurance in a solvent company to the ·extent of minimum coverage for uninsured motorist protection in the amounts of $15,000/$30,000.

> The *Calvert* decision therefore stands for the proposition that, to the extent an "other vehicle" exclusion clause prevents an insured from any recovery for injuries sustained as a result of a collision with an uninsured motor vehicle, the exclusion violates public policy.

State Farm notes that the policy on the Datsun provided $15,000/$30,000 UM coverage, and that unlike the situation in *Calvert,* the "other vehicle" exclusion in the policy on the Volkswagen thus would not operate to deprive the Janssens of the statutory minimum UM coverage. State Farm further argues:

> What the exclusion does legitimately accomplish in the instant case is eliminate the windfall to an insured of coverage for two or more vehicles based upon the payment of only one premium. The fact that coverage is provided by one of the two policies satisfies the public policy of providing mandatory minimum coverage as called for in the Act.

State Farm primarily bases the rationale for its position in this appeal on two pre-*Calvert* decisions: *Transportation Ins. Co. v. Wade,* 106 Ariz. 269, 475 P.2d 253 (1970); and *State Farm Mut. Auto. Ins. Co. v. Williams,* 123 Ariz. 455, 600 P.2d 759 (App.1979). In *Wade,* the decedent was riding as a passenger in his 1962 Buick which his brother was driving. The uninsured driver of a truck hit the Buick and caused the decedent's death. The decedent's estate sustained damages in excess of $10,000. The decedent's automobile liability policy included the then-minimum $10,000 UM coverage. The decedent's brother's automobile liability policy also provided UM coverage, in an amount not stated in the court's opinion. The brother's policy also contained an "other insurance" clause which, with respect to injuries to an insured while occupying an automobile not owned by the named insured, treated the UM coverage as excess insurance over any other similar available insurance. That policy applied UM coverage only in the amount by which the coverage limit exceeded the applicable limit of the other available insurance.

The decedent's insurer paid his estate the full $10,000 UM limit under the decedent's policy. The estate thereafter sought to recover additional damages against the brother's insurer. Reversing the trial court, the Arizona Supreme Court held for the insurer, stating:

> The rule stated in *Stephens v. Allied Mutual Insurance Company,* 182 Neb. 562, 156 N.W.2d 133, has its full application in a case of this nature:
>
> " * * * The uninsured motorist statute established in this state a public policy that every insured is entitled to recover damages he or she would have been able to recover if the offending motorist had maintained a policy of liability insurance in a solvent company. * * *"

Here, had the offending motorist carried insurance in accordance with the Financial Responsibility Act, Wade would have recovered the same amount—$10,000—as he did here. The public policy as expressed in the statute has been satisfied

and any "excess-escape clauses" applying to superfluous amounts of coverage fall in the area of contract law between the insuring parties and not in the realm of public interest.

*Wade,* 106 Ariz. at 273, 475 P.2d at 257.

We later followed *Wade* in *State Farm Mut. Auto. Ins. Co. v. Williams.* In that case the insured had three separate policies on three automobiles he owned, all of which were issued by the same company and all of which provided the then-minimum UM coverage of $10,000. While riding as a passenger in a car he did not own, the insured was injured by the negligence of an uninsured driver. We held that the "other insurance" clauses in the insured's three policies validly prevented the "stacking" of the three UM liability limits, and that the insurer's total liability was $10,000, not the aggregate of $30,000. We stated:

> Under Arizona law uninsured motorist coverage may be limited to the amounts set forth in the Uninsured Motorist Act. Provided this amount of coverage is available, any other coverage is subject to contract between the insured and the insurer. By contract, the insurer has unambiguously limited its coverage to that amount. This it can legally do and the insured receives exactly what he would have been entitled had the uninsured motorist held a policy with the minimum statutory limits.

*Williams,* 123 Ariz. at 460, 600 P.2d at 764. *See also Bakken v. State Farm Mut. Auto. Ins. Co.,* 139 Ariz. 296, 678 P.2d 481 (App.1983).

More recently, however, our supreme court decided *Calvert v. Farmers Ins. Co.* In that case, the named insured had an automobile liability policy issued by Farmers Insurance Company of Arizona which contained $30,000 UM coverage.[1] The policy included the named insured's family members as insured persons, but provided that the UM coverage did not apply to bodily injury sustained by a person:

> 1. While *occupying* a *motor vehicle* owned by you or a *family member* for which insurance is not afforded under this policy or through being struck by that *motor vehicle.*

144 Ariz. at 293, 697 P.2d at 686 (emphasis in policy).

While the policy was in force, an uninsured driver struck and fatally injured the named insured's son while he was riding a motorcycle which either he or the named insured owned. Because the motorcycle was not insured under the policy, Farmers took the position that the exclusion applied and no UM benefits were owed. In the named insured's declaratory judgment action, the trial court ruled for Farmers, but the Arizona Supreme Court reversed.

In characterizing the issue before it, the supreme court stated:

> Since § 20-259.01 controls the uninsured motorist protection mandated in Arizona, to resolve this case we must interpret this statute and determine whether it authorizes an "other vehicle" exclusion. This is a matter of statutory construction.

144 Ariz. at 293-94, 697 P.2d at 686-87. Observing that the statute established a public policy that every insured is entitled to recover damages he or she would have been able to recover if the uninsured had maintained a policy of liability insurance in a solvent company, and that the purpose of the statute was to afford protection to victims of financially irresponsible drivers, the court held Farmers' "other vehicle" exclusion was void. The court stated:

> We believe that the exclusion provision in this case contravenes the public policy underlying the Uninsured Motorist Act. The Act mandates that every policy issued have at least the minimum limits for uninsured motorist protection. In Arizona, such coverage is not voluntary as in other jurisdictions. Furthermore, the statute does not contain numerous exceptions to coverage as in the unin-

---

1. By that time, the statutory minimum uninsured motorist coverage for bodily injury or death had been increased to $15,000 per person and $30,000 per accident. A.R.S. § 20-259.01(A) [set forth in *Calvert,* 144 Ariz. at 293, 697 P.2d at 686]; A.R.S. § 28-1102(6).

sured motorist statutes of other jurisdictions.

....

Consequently, because of the strong public policy mandating coverage for innocent victims from tragic negligent acts of uninsureds, we will not construe the uninsured motorist statute to reduce coverage when it is silent on "other vehicle" exclusions. This conclusion is in accord with the vast majority of jurisdictions that have dealt with this issue. About twenty-six states have held that an "other vehicle" exclusion clause similar to the one herein violates the public policy underlying their respective uninsured motorist statutes.... We have carefully read these cases, and although the uninsured motorist statutes of the other states are not identical to the Arizona statute, we can find no important distinction among them. We find these cases highly persuasive.

144 Ariz. at 294–95, 697 P.2d at 687–88. The court also stated:

Furthermore, our Uninsured Motorist Act was created "for the protection of persons," and not for the protection of the insured vehicle. A.R.S. § 20–259.01.... There is nothing in our uninsured motorist statute which limits coverage depending on the location or status of the insured. Thus, our uninsured motorist protection is portable. The insured and family members insured are covered not only when occupying an insured vehicle, but also when in another automobile, when on foot, when on a bicycle or when sitting on a porch.... Any gaps in uninsured motorist protection dependent on location of the insured should be sanctioned by the Legislature and not by this Court.

144 Ariz. at 296, 697 P.2d at 689. The court summarized its holding as follows:

We hold that the exclusion denying coverage to an insured injured by an uninsured motorist while the insured is occupying a vehicle owned by the insured but not listed in the policy is invalid as being contrary to the coverage mandated by A.R.S. § 20–259.01.

144 Ariz. at 297, 697 P.2d at 690.

We find nothing in *Calvert* that would justify accepting State Farm's invitation to limit it to its own facts. It is true that in introducing its substantive analysis, the *Calvert* opinion acknowledged the public policy that every insured who is injured by a negligent uninsured driver be able to recover damages he or she could have recovered if the uninsured driver had maintained liability coverage through a solvent insurer. For numerous reasons, however, we cannot agree that the *Calvert* court thereby intended merely to reiterate the view that the statutory purpose extends no further than to guarantee for each insured the availability of the bare minimum $15,000/$30,000 UM protection.

The issue the Arizona Supreme Court posed for itself in *Calvert* was not whether the "other vehicle" exclusion in that case operated validly as applied to the particular facts. Instead it was far broader; whether, as "a matter of statutory construction," A.R.S. § 20–259.01 "authorizes an 'other vehicle' exclusion." 144 Ariz. at 293–94, 697 P.2d at 686–87. The court specifically answered this question in the negative. Further, although the automobile policy in question in *Calvert* provided double the then-statutory minimum UM coverage, the *Calvert* court did not hold the exclusion invalid only to the extent it would have reduced the available coverage below the statutory minimum, as it had in *Wade* and in *Arceneaux v. State Farm Mut. Auto. Ins. Co.,* 113 Ariz. 216, 550 P.2d 87 (1976), but rather declared the exclusion invalid in its entirety. In addition, the *Calvert* court emphasized the portability of statutory UM protection. It pointedly noted there was nothing in the statute limiting uninsured motorist coverage depending on the location or status of the insured, and stated that only the legislature could sanction any such "gaps." Finally, two of the non-Arizona cases which the *Calvert* court stated it had "carefully read" and found "highly persuasive" struck down "other vehicle" exclusions despite the availability of UM coverage on the vehicles in which the in-

sureds were actually injured. *Beek v. Ohio Cas. Ins. Co.*, 135 N.J.Super. 1, 342 A.2d 547 (1975), *aff'd mem.*, 73 N.J. 185, 373 A.2d 654 (1977); *State Farm Mut. Auto. Ins. Co. v. Williams*, 481 Pa. 130, 392 A.2d 281 (1978). *Calvert*, 144 Ariz. at 294, 697 P.2d at 687.

In *Williams*, the appellant owned a Chevrolet truck covered by a State Farm automobile policy with $10,000 statutory minimum UM coverage, and his wife owned a Plymouth also insured by State Farm with the same UM coverage. The appellant was injured due to the negligence of an uninsured motorist while driving his wife's Plymouth, and his damages exceeded $10,000. State Farm paid appellant $10,000 under his wife's policy, but refused to pay any UM benefits under appellant's policy on his Chevrolet truck, relying on a standard "other vehicle" exclusion that applied to the named insured and any residents of the same household. The Supreme Court of Pennsylvania reversed the trial court's confirmation of an arbitrator's award for State Farm, relying on its earlier decision in *Harleysville Mut. Cas. Co. v. Blumling*, 429 Pa. 389, 241 A.2d 112 (1968). Quoting from *Harleysville*, the court stated:

> The purpose of the uninsured motorist law is to provide protection to innocent victims of irresponsible drivers. The amount of the coverage to be afforded by the uninsured motorist feature of the policy is set by the statute, but nowhere, explicitly or implicitly, does the act place a limit on the total amount a victim may recover if he suffers a loss resulting from the negligence of an uninsured motorist.

481 Pa. at 140, 392 A.2d at 285–86, quoting *Harleysville*, 429 Pa. at 395–96, 241 A.2d at 115. Similarly, the court in *Beek v. Ohio Cas. Ins. Co.* stated, quoting *Motor Club v. Phillips*, 66 N.J. 277, 330 A.2d 360 (1974):

As to the literal import of the New Jersey statute there can be no doubt. It commands that *"no* automobile policy" [emphasis supplied] shall *issue* in this state unless it offers coverage for payment, within stated limits, of what an uninsured motorist would be liable for to an insured for damages for bodily injuries. Since *every* policy must offer such coverage, and the statute contains no suggestion of relief from its undertaking in favor of an issuing insurer merely because another insurer had assumed the same obligation in favor of the same accident victim, the statute unambiguously grants the victim *prima facie* recourse to any and all policies applicable, subject to the unquestionably implicit condition that his claims in aggregate not exceed his damages. [At 292, 330 A.2d at 368; emphasis in original.]

135 N.J.Super. at 4, 342 A.2d at 548.[2]

Completing the analysis is *Spain v. Valley Forge Ins. Co.*, 152 Ariz. 189, 731 P.2d 84 (1986), which our supreme court handed down shortly after the parties completed the briefing in this appeal. In that case Storey, a passenger in a Subaru owned and driven by Billing, died from injuries she received when the Subaru collided with a car operated by an uninsured driver. By stipulation, both drivers were found to be negligent. Billing's automobile liability policy, issued by Valley Forge, provided $100,000 liability coverage and $100,000 UM coverage. Storey was an "insured" under the Valley Forge UM coverage. The policy also provided, however, that Valley Forge was obligated to pay only a "single limit" of $100,000 per accident, and further provided that any sums paid under the liability coverage would reduce the limit of liability under the UM coverage.

Valley Forge paid the $100,000 liability limit on the claim of Spain, Storey's person-

2. *Accord Travelers Indem. Co. v. Powell*, 206 So.2d 244 (Fla.App.1968); *Harhen v. State Farm Mut. Auto. Ins. Co.*, 61 Ill.App.3d 388, 18 Ill.Dec. 542, 377 N.E.2d 1178 (1978); *Branch v. O'Brien*, 396 So.2d 1372 (La.App.1981); *Crenwelge v. State Farm Mut. Auto. Ins. Co.*, 277 So.2d 155 (La.App.1973); *Boettner v. State Farm Mut. Ins. Co.*, 388 Mich. 482, 201 N.W.2d 795 (1972); *Grange Mut. Cas. Co. v. Volkmann*, 54 Ohio St.2d 58, 374 N.E.2d 1258 (1978). *Contra Arguello v. State Farm Mut. Auto. Ins. Co.*, 42 Colo.App. 372, 599 P.2d 266 (1979); *State Farm Fire and Cas. Co. v. Short*, 603 S.W.2d 496 (Ky. 1980); *Breaux v. Louisiana Farm Bureau Mut. Ins. Co.*, 413 So.2d 988 (La.App.1982).

al representative, against Billing for negligence. Spain also contended, however, that the uninsured driver's negligence was a cause of the accident, and demanded an additional $100,000 pursuant to the UM coverage in the Valley Forge policy. Citing the policy's offset provisions, Valley Forge denied that claim.

In a declaratory judgment action brought by Spain, the trial court ruled for Valley Forge. On appeal, this court in a decision by Division 2 held that if both drivers had negligently caused the collision, both the liability and the UM coverages applied. Citing *Arceneaux v. State Farm Mut. Auto. Ins. Co.*, however, the court concluded that Valley Forge was free through its offset provisions to eliminate all UM coverage in excess of the $15,000 minimum required by A.R.S. § 20–259.01(A). The court also held that A.R.S. § 20–259.01(B) was inapplicable.[3]

On review, the Arizona Supreme Court vacated the Division 2 opinion and reversed the trial court's judgment, holding the offset provisions were against public policy and void. The court reasoned:

The statute establishes a public policy that every insured is entitled to recover under his or her UM coverage the damages he or she would have been able to recover from a negligent uninsured driver had that driver maintained a policy of liability insurance with a solvent company. *Calvert v. Farmers Insurance Co. of Arizona*, 144 Ariz. 291, 294, 697 P.2d 684, 687 (1985); *Transportation Insurance Co. v. Wade*, 106 Ariz. 269, 273, 475 P.2d 253, 257 (1970). In effect, A.R.S. § 20–259.01(B) does no more than raise that entitlement from the minimum limit of $15,000 set by subsection (A) to an amount equal to the liability limits which the insured has bought. Thus, A.R.S. § 20–259.01(B) allows the driver to protect himself and his passengers—most often his own family and friends—from the loss by injury caused by uninsured drivers to the same extent that he protects others from the risks of his own negligence.

. . . .

A.R.S. § 20–259.01(B) provides that an insured may purchase UM coverage up to the limits of his or her liability coverage. The clear meaning of this provision is that an insured who exercises the statutory right to purchase UM coverage equal to the limit of liability coverage has available the total of the two in the event of an accident such as occurred here. Any attempt to reduce this coverage from the amount the legislature has given the insured the right to buy violates the uninsured motorist statute and is therefore void as against public policy. The uninsured motorist statute could, but does not, authorize or contemplate the offset claimed by Valley Forge.

152 Ariz. at 192–93, 731 P.2d at 87–88.

*Spain* makes it clear, then, that any insured's statutory entitlement to UM coverage is not limited to the $15,000/$30,000 floor provided by A.R.S. § 20–259.01(A), but also extends to that amount of coverage, up to the policy's liability limit, that the named insured has actually elected to purchase pursuant to A.R.S. § 20–259.-01(B). As *Calvert* held, the "portable" UM coverage to which insureds are statutorily entitled protects people, not vehicles, and continues to protect them from damage sustained due to the acts of negligent uninsured drivers up to the limits of the pur-

**3.** A.R.S. § 20–259.01(B) provides:

Every insurer writing automobile liability or motor vehicle liability policies, as provided in subsection A of this section shall also make available to the named insured thereunder and by written notice offer the insured and at the request of the insured shall include within the policy uninsured motorist coverage which extends to and covers all persons insured under the policy, in limits not less than the liability limits for bodily injury or death contained within the policy. The offer need not be made in the event of the reinstatement of a lapsed policy or the transfer, substitution, modification or renewal of an existing policy. At the request of the insured, the insured may purchase and the insurer shall then include within the policy uninsured motorist coverage which extends to and covers all persons insured under the policy in any amount up to the liability limits for bodily injury or death contained within the policy but not less than the limits prescribed in subsection A of this section.

chased coverage, no matter where they are or what they are doing. Read together, *Spain* and *Calvert* mandate the conclusion that State Farm's "other vehicle" exclusion is invalid whether or not the insured has other available UM coverage in connection with an accident in which he or she is injured by a negligent uninsured driver while riding in a vehicle owned by the named insured but not insured under the policy in question.

Given *Calvert* and *Spain,* our earlier decisions in *State Farm Mut. Auto. Ins. Co. v. Williams* and *Bakken v. State Farm Mut. Auto. Ins. Co.,* cannot support a different result. We also note that unlike *Williams* and *Bakken,* the instant case does not present the question of whether "other insurance" clauses may validly prevent the "stacking" of UM coverages, which, as stated above, is a question we do not reach.

State Farm's reliance on *Cole v. State Farm Mut. Auto. Ins. Co.,* 145 Ariz. 578, 703 P.2d 522 (App.1985), and *Mason v. State Farm Mut. Auto. Ins. Co.,* 148 Ariz. 271, 714 P.2d 441 (App.1985), is misplaced. Both those cases held that exclusions from underinsured motorist coverages were not in violation of public policy where at least $15,000 in insurance coverage was available from other sources, thereby satisfying the $15,000 minimum underinsured motorist coverage formerly required by A.R.S. § 20–259.01 (A).[4] Both *Mason* and *Cole* concerned underinsured motorist coverage, which is not before us in the instant case. We note also an important fundamental distinction between the two coverages. Under A.R.S. § 20–259.01, uninsured coverage is required, whereas underinsured coverage is optional, thus indicating an obvious distinction, legislatively, between the two.[5]

*Preferred Risk Mut. Ins. Co. v. Tank,* 146 Ariz. 33, 703 P.2d 580 (App.1985), also

provides no support for State Farm's position. In that case the named insured had $50,000/$100,000 liability coverage and $15,000/$30,000 underinsured motorist coverage. While driving his insured car, he negligently caused an accident in which his passengers incurred damages in excess of his liability coverage. The court held that even though the passengers were "insureds" under the named insured's policy, his underinsured motorist coverage did not apply to their claims against the named insured, because it was not the legislative intent to allow underinsured motorist coverage to be "stacked" to effectively increase the liability coverage purchased by the named insured. In that case we specifically distinguished decisions that had invalidated UM exclusions because uninsured motorist and underinsured motorist coverages are fundamentally different, and the exclusion before the court did not frustrate the statutory purpose behind underinsured motorist coverage. Unlike *Preferred Risk,* the instant case does not concern a proposed application of either uninsured or underinsured motorist coverage in such a way as to increase the named insured's bodily injury liability coverage. It does not affect the analysis in this case.

■ If our decision needs reinforcement, then we find it in the following circumstances. If the Janssens had, for whatever reason, elected not to purchase insurance on their Datsun, it is clear under *Calvert* that the UM coverage on their Volkswagen would be available. That, in its turn, produces the novel proposition that by insuring the Datsun, and paying a premium for that protection, they thereby confined themselves to the UM limits of the Datsun policy, whereas if they had purchased no insurance whatsoever on the Datsun, their entitlement to claim the UM limits of the Volkswagen policy would be unquestionable. We do not believe that *Calvert,* given

---

**4.** *But see* Laws 1986, Ch. 184, § 1 (removing provision that allows insurer to subrogate and sue for reimbursement of payments made pursuant to underinsured motorist coverage).

**5.** We accordingly need not address any possible impact on the holdings in *Mason* and *Cole* of

*Spain*'s analysis of A.R.S. § 20–259.01(B), which is virtually identical to the provisions of A.R.S. § 20–259.01(C), entitling the insured to purchase underinsured motorist coverage up to the limits of his bodily injury liability coverage.

its holdings, would countenance such a result. The same circumstances also do much to dispose of State Farm's argument that the Janssens achieve a "windfall" because they had paid "only one premium." Moreover, as to such "windfall" contentions, the argument essentially made by State Farm, that is, without the "other owned" vehicle exclusion an insured would be permitted "to purchase one liability policy on one owned vehicle and claim uninsured motorist protection for himself and others while driving any number of other uninsured automobiles also owned by him," was expressly considered and rejected by the supreme court in *Calvert*, from which the quoted language is derived. 144 Ariz. at 296, 697 P.2d at 689; *see also Owens v. Allied Mut. Ins. Co.*, 15 Ariz.App. 181, 487 P.2d 402 (1971), expressly overruled in *Calvert*, 144 Ariz. at 297, 697 P.2d at 690.

In conclusion, if State Farm's contentions on this appeal could be considered purely in the light of the law of contracts, those contentions might be tenable. It is clear, however, that we are dealing here with matters of public policy mandated by the legislature, and that policy, as construed by *Calvert*, simply preempts the arguments made.

■ We lastly consider State Farm's contention that the trial court erred in declaring that, despite the subrogation clause in its policies, State Farm had no legal right to be subrogated to any proceeds the Janssens may recover from any party other than the uninsured motorist. We disagree. The common law of Arizona is settled that subrogation or assignment of a personal injury claim is void. *Allstate Ins. Co. v. Druke*, 118 Ariz. 301, 576 P.2d 489 (1978); *American & Foreign Ins. Co. v. Allstate Ins. Co.*, 139 Ariz. 223, 677 P.2d 1331 (App.1983); *Gallego v. Strickland*, 121 Ariz. 160, 589 P.2d 34 (App.1978). A.R.S. § 20–259.01 provides in part:

> G. Insurers who make payments for damages to insureds under the uninsured requirements of this section may subrogate and sue for reimbursement of the total amount of said payments in the name of the insured *against any unin-sured motorist responsible for the damages to the insured.*
>
> H. Any common law prohibition against assignments of causes of action for personal injuries is abrogated *to the extent provided in subsection G of this section.*

(Emphasis added.) The statute abrogates the common law prohibition against assignment or subrogation of personal injury claims only to the extent of allowing insurers to sue "any uninsured motorist responsible for the damages to the insured" for reimbursement of any damages they may have paid to the insured under the statutory uninsured motorist coverage requirements.

In this case State Farm assertedly intended to seek reimbursement not from the uninsured motorist allegedly liable for the Janssens' injuries, but rather from a third party alleged to have negligently contributed to the accident. The Arizona common law prohibition against subrogation or assignment of personal injury claims precludes State Farm from doing so, and A.R.S. § 20–259.01(G) & (H) does not apply. The trial court correctly determined the Janssens' counterclaim for declaratory relief.

The Janssens have requested an award of attorney's fees on appeal. Pursuant to A.R.S. § 12–341.01(A), we grant the request. The Janssens may establish the amount of their award by complying with Rule 21(c), Arizona Rules of Civil Appellate Procedure, and our decision in *Schweiger v. China Doll Restaurant, Inc.*, 138 Ariz. 183, 673 P.2d 927 (App.1983).

Affirmed.

CORCORAN, P.J., and EUBANK, J., concur.