918 P.2d 1088

**Kelly Ranae SMITH, Petitioner–Appellee,**

v.

**Richard Dean SAXON, Respondent–Appellant.**

**No. 1 CA–CV 94–0455.**

Court of Appeals of Arizona,
Division 1, Department E.

May 28, 1996.

As Corrected June 13, 1996.

Brinton & Steffey, L.L.C. by Dean H. Steffey, Mesa, for Petitioner–Appellee.

Law Offices of Kenneth P. Bemis by Kenneth P. Bemis, Phoenix, for Respondent–Appellant.

## OPINION

THOMPSON, Judge.

Richard Dean Saxon appeals from the trial court's order denying his motion to vacate or void another court order requiring him to pay $473 per month in child support to Kelly Ranae Smith. For the reasons discussed below, we reverse.

## FACTS AND PROCEDURAL HISTORY

Saxon and Smith were living together in 1982. During that time, Smith became pregnant and believed that Saxon was the unborn child's father. The parties ended their relationship before the child was born.

In July 1982, while Smith was still pregnant, the State of Arizona brought a paternity action against Saxon through the Maricopa County Attorney's Office, with Smith as the complaining witness. The action sought to establish Saxon as the father of Smith's unborn child and to recover child support and other benefits. Saxon answered the complaint, denying paternity.

Thereafter, the county attorney handling the matter moved to dismiss the case with prejudice because Smith would not pay for the requisite blood tests. In the motion, the county attorney stated that he had advised Smith that the dismissal of the paternity action would "forever foreclose her and the child from filing an action against [Saxon] in

the future." On October 28, 1982, Judge Cheryl Hendrix dismissed the paternity action with prejudice. Two months later, Smith gave birth to her daughter, Jaci.

In September 1987, Smith filed a paternity action against Saxon, again seeking child support and other expenses. Saxon contacted Smith to discuss a settlement in light of this court's decision in *Bill By and Through Bill v. Gossett*, 132 Ariz. 518, 647 P.2d 649 (App.1982) (prior paternity judgment in unsuccessful suit brought by state immune from collateral attack by minor). Saxon suggested that, in keeping with *Bill*, Judge Hendrix's order dismissing the state's paternity action against Saxon was *res judicata* and that Smith's claim against Saxon was barred.

On June 23, 1988, Saxon and Smith entered into a "Settlement Agreement" which stated that Saxon was Jaci's natural father, that Saxon's prior "denial of paternity was wrongful and constituted extrinsic fraud" because he "knew at the time of his denial that he was [Jaci's] father," that the order of dismissal from the original paternity action barred Smith's claims, and that Smith agreed to waive the child support guidelines and accept the sum of $75.00 per month as reasonable support.[1] The agreement further stipulated that Smith would never seek an increase of child support and that if she sought an increase, the agreement would be deemed a nullity. Finally, the agreement provided for visitation rights to Saxon and his parents.

The agreement was filed on June 28, 1988, along with Saxon's Acknowledgment of Paternity. Judge Rufus Coulter simultaneously entered a stipulated judgment which provided that, after considering the agreement and acknowledgment, the court found that Saxon was the natural father of Jaci and vacated the previous dismissal. The court further ordered Saxon to pay Smith child support of $50 per month and to place an additional $25 per month into a trust fund for Jaci's future educational needs. Smith was awarded custody of Jaci and ordered to avoid unrequested contact with Saxon. Saxon and his parents were allowed visitation with Jaci.

On April 27, 1993, Smith filed a Simplified Modification of Child Support seeking an increase in monthly support. Saxon argued that their prior agreement barred Smith's action. Alternatively, Saxon asserted that there were no substantial and continuing changes since the time of the execution of the agreement to justify an increase in the amount of support. At a hearing on Smith's motion, Judge *Pro Tempore* Lindsay Ellis found that the judgment entered by Judge Coulter did not serve as a bar to modification because its terms were contrary to public policy and not in Jaci's best interests. Judge Ellis ordered Saxon to pay $473 per month in child support pursuant to Arizona Child Support Guidelines. Judge Ellis further found a "substantial and continuing change in circumstances justifying the child support modification" because of Jaci's changing needs and because the application of the guidelines resulted in an award that varied by fifteen percent or more from the prior support judgment.

Before Judge Ellis's order on the matter was filed, Saxon moved to void the judgment on the basis that Judge Ellis lacked jurisdiction as a "commissioner" to enter the judgment. He also renewed his motion to vacate Judge Coulter's judgment due to Smith's violation of the parties' agreement, requesting the parties be returned to their status as of the order of dismissal of the original paternity action.

In October 1993, Judge Franks denied Saxon's motions, stating that Judge Ellis had jurisdiction to decide the modification and that:

> small payment per month in exchange for her promise to quit contacting him. Saxon further asserted that he agreed to acknowledge paternity and admit to extrinsic fraud only because Smith's attorney represented that without such admissions, Judge Coulter could not enter the stipulated judgment approving the agreement and vacating the initial order of dismissal with prejudice.

---

1. Saxon later contended that he was willing to enter the settlement agreement because, although he was still unsure of the child's paternity, he recognized the possibility that he could be Jaci's father. Further, his parents had grown fond of Jaci and he wanted to ensure their continued access to her. Finally, because he was now married, Saxon wanted to sever all association with Smith and was willing to make a

The Court cannot agree [to return the case to the original status of dismissal with prejudice], as to do so, would be fundamentally unfair to the child in question. The child was never represented in the original agreement. The agreement is not fair to the child nor is it in the child's best interest. It would be extremely prejudicial to the child to void the original finding of paternity, which [Saxon] does not deny is an accurate finding. Since 1988, [Saxon] has had the benefit of only paying $75.00 a month for this child. The Court finds, however, that it is no longer appropriate for this benefit to continue.

Saxon timely appealed from Judge Franks's order denying his motions. We have jurisdiction over this matter pursuant to Arizona Revised Statutes Annotated (A.R.S.) § 12–2101(B).

## DISCUSSION

Saxon argues that Judge Ellis *as a commissioner* lacked authority to hear the merits of this matter and to modify the judgment entered by Judge Coulter. Judge Franks rejected this argument, specifically finding that Judge Ellis was acting in her capacity as a Judge *Pro Tempore*, not as a commissioner, at the time she considered the modification and, that as a Judge *Pro Tempore*, Judge Ellis had authority to rule on the matters before her. Saxon has not provided us with any support for his assertion that Judge Ellis was acting as a commissioner at the time she issued her orders. We thus have no reason to disturb Judge Franks's finding on this issue.

■ The appointment of judges *pro tempore* to the Maricopa County Superior Court is authorized by article 6, § 31 of the Arizona Constitution. Article 6 states:

The Legislature may provide for the appointment of members of the bar having the qualifications provided in § 22 of this article as judge pro tempore of courts inferior to the Supreme Court. *When serving, any such person shall have all the judicial powers of a regular elected judge of the court to which he is appointed.*

(Emphasis added.) The constitutional provision clearly provides that a person sitting as a judge *pro tempore* has the same judicial powers and authority as a regularly seated superior court judge. *State v. White*, 160 Ariz. 24, 32, 770 P.2d 328, 336 (1989). Judges of the superior court have jurisdiction over proceedings to modify child support. A.R.S. § 12–2452(A). Therefore, Judge Ellis did not act outside her authority in this matter.

■ Saxon next asserts that Judge Ellis erred in determining that the terms of Judge Coulter's stipulated judgment and the parties' settlement agreement were "contrary to public policy" and "not in the best interests of the minor child" and that Judge Franks erred in concurring with that determination.[2] Absent ascertainable public policy to the contrary, parties are free to contract as they wish. *Mason v. State Farm Mut. Auto. Ins. Co.*, 148 Ariz. 271, 274, 714 P.2d 441, 444 (App.1985). At the same time, every parent has the duty to provide reasonable support for his or her natural and adopted minor unemancipated children. A.R.S. § 12–2451. Smith contends that the agreement and stipulated judgment violate this public policy by enabling Saxon to contract away his legal obligation to support his child.

■ A parent may not form a valid and enforceable contract which releases the parent from all obligation to support his or her minor children. *Evans v. Evans*, 17 Ariz. App. 323, 325–26, 497 P.2d 830, 832–33 (1972) (wife may not relinquish all claims for child support in exchange for receiving substantial property rights from husband); *see also Huckaby v. Huckaby*, 75 Ill.App.3d 195, 30 Ill.Dec. 909, 912–13, 393 N.E.2d 1256, 1259–60 (1979) (parties cannot agree to suspend child support payments for failure of wife to afford husband visitation with children); *Richardson v. Richardson*, 427 So.2d 518, 520 (La.App.1983) (wife may not waive all claims for child support in exchange for $5,000 settlement); *Calton v. Calton*, 485 So.2d 309, 310 (Miss.1986) (wife may not accept deed to real property in exchange for

---

2. Although neither judge specified, it appears that both judges were concerned about Smith's

agreement to waive the support recoverable under the guidelines.

release of all claims for child support). However, in the instant case, the parties' settlement agreement and the stipulated judgment do not relieve Saxon of a support obligation; rather, they impose a support obligation upon him which otherwise would not exist.

▋ Unlike the above case scenarios, Saxon did not have any legal obligation to support Jaci prior to the execution of the parties' agreement. *See Lamb v. Superior Court,* 127 Ariz. 400, 621 P.2d 906 (1980) (in absence of valid judgment, decree or order requiring payment of fixed sum as child support, no such duty exists, notwithstanding statute imposing general duty on parents to support their children; it is valid judgment, decree or order that creates duty and governs its extent). To the contrary, the order dismissing the state's paternity action with prejudice precluded Smith or Jaci from pursuing an additional action for paternity or child support against Saxon. *Bill,* 132 Ariz. at 523–24, 647 P.2d at 654–55;[3] *but see People in the Interest of M.C.,* 895 P.2d 1098 (Colo.App.1994) (child not barred from bringing own paternity action despite jury verdict in state's paternity action in favor of putative father; child's interests in declaration of paternity more far reaching than state's). It was only through the parties' agreement and the corresponding judgment that Smith and Jaci obtained Saxon's acknowledgment of paternity and payment of monthly support. Therefore, the agreement and stipulated judgment were in the best interests of the child and not contrary to public policy. Consequently, the agreement should have been enforced by Judge Ellis and Judge Franks.[4]

## CONCLUSION

The trial court erred in holding that the settlement agreement and stipulated judgment were against public policy and the best interests of the child. We therefore reinstate the stipulated judgment and direct the parties to abide by the terms of that judgment and their agreement. We vacate the

**3.** We are unpersuaded by the dissent's attempt to distinguish *Bill* on the purported basis that it involved a determination on the merits after stipulated polygraph testing. The dissent does not explain why a child's mother is competent to stipulate to the means of determining a disputed paternity issue (and to stipulate away her child's right to have the issue determined on competent evidence) but incompetent to settle the issue of paternity itself.

Indeed, the dissent completely disregards the legal framework that encourages the compromise and settlement of disputed claims. Statements made in settling a disputed claim are not admissible to prove the declarant's liability for the claim. Ariz. R. Evid. 408. Yet the dissent would have no difficulty at all in rejecting the parties' settlement here but accepting Saxon's "admissions of paternity and extrinsic fraud," notwithstanding that these "admissions" were only made as a condition of, and to further, the settlement agreement. Saxon's "admissions" are completely inadmissible outside of the context of a proceeding to enforce the agreement which caused them to be made. *See generally* M. Udall & J. Livermore, Law of Evidence § 88, at 197–8 (3d. ed. 1991) ("... [I]t has long been the law that settlements and offers to settle are inadmissible in litigation.") And the "fraud" which Saxon admitted (apparently falsely stating that he did not father Smith's child) would not have furnished grounds for relief from the original judgment dismissing the paternity claim with prejudice, but for Saxon's agreement that relief be afforded, because Saxon's denial of paternity did not in any respect interfere with Smith's

ability to present her claim on the merits. *See Estate of Page v. Litzenburg,* 177 Ariz. 84, 93–94, 865 P.2d 128, 137–38 (App.1993) (to obtain relief from judgment on grounds of adverse party's fraud, fraud must have prevented movant from presenting meritorious claim).

The dissent, in its enunciation of a public policy that would allow the state acting through its judges to interfere at will in parents' reasonable calculations as to the best interests of their children, would also abrogate the important and undeniable public policy that recognizes the finality of judgments and discourages multiplicitous litigation. *See Bill,* 132 Ariz. at 523, 647 P.2d at 654 (paternity statutes do not contemplate multiple and successive actions to vindicate same interest of child to parental support; where child's interest was pursued in prior litigation by appropriate legal representative, resolution of prior case is final). We decline the invitation, which the dissent would accept, to wipe out two judgments (that dismissing the original paternity action with prejudice as well as the judgment setting child support at amount to which Smith stipulated) which were neither appealed nor directly challenged by independent action and which were both clearly final. And we deem it insupportable to enforce a duty acknowledged by one party to an agreement while rejecting the agreement that created the duty.

**4.** Given our resolution of this matter we need not reach the other arguments raised by Saxon in support of reversal of the lower court's order of support.

contrary orders of the lower court. We deny Saxon's request for attorneys' fees incurred in this appeal. Although the parties' settlement agreement provides for such an award, the agreement does not bind this court's discretion regarding fee awards in domestic relations cases. *Edsall v. Superior Court,* 143 Ariz. 240, 248, 693 P.2d 895, 903 (1984); A.R.S. § 25–324. In our discretion, we decline to award fees to either party.

GERBER, P.J., concurs.

VOSS, Judge, dissenting.

Saxon admitted paternity and conceded that his original denial of paternity was extrinsic fraud. Because of the perceived problems presented by *Bill,* Saxon agreed to pay the munificent sum of $2.47 per day for child support. This sum was a percentage of the guideline amount, and the agreement prohibited any modification of child support in the future.

The case upon which Saxon relied to support his argument for preclusion, *Bill,* is distinguishable from the instant case. In *Bill,* the putative father and the mother entered into an evidentiary stipulation that would settle the issue of paternity. 132 Ariz. at 519, 647 P.2d at 650. The parties used the stipulated procedure (a polygraph examination) to determine conclusively the merits of the case. The mother failed the polygraph examination, thereby providing the evidence on which the issue was decided. *Id.* *Bill* was decided on the merits.

Here, Smith, fearful of Saxon, believed that she and the child she was carrying would be better served if the proceedings did not continue. Therefore, Smith decided not to pay for a blood test, prompting the state to dismiss its case. Thus, the dismissal here was not founded on evidence or an evidentiary stipulation that addressed the merits of the paternity issue as in *Bill.* Furthermore, Saxon's admissions of paternity and extrinsic fraud in the 1988 agreement add to the uncertainty as to whether *Bill* precluded further action by Smith.

If *Bill* is not controlling, then we face a contract that attempts to foreclose any modification of a settlement agreement. The law in Arizona prohibits one parent from reliev-ing another parent from his or her duty to support their minor child through a contract. *Evans v. Evans,* 17 Ariz.App. 323, 325, 497 P.2d 830, 832 (1972). Such contracts violate public policy. That same rationale leads to the conclusion that contracts regarding the modification of prospective child support are also invalid. *Mason v. Mason,* 873 S.W.2d 631, 635 (Mo.Ct.App.1994); *In re the Marriage of Watkins,* 42 Wash.App. 371, 710 P.2d 819, 821 (1985). One cannot meet his or her obligation to a child if he or she contracts with the other parent to prohibit modification of support regardless of any changed circumstance. In such cases, the contract thwarts the public policy of ensuring continued support for one's children commensurate with their legitimate needs. *See generally* A.R.S. § 12–2453(D) (providing for modification or revocation of support order upon showing of substantial and continuing changed circumstance).

The legislature determined that the prevailing party in modification actions may appropriately be awarded attorney's fees. A.R.S. § 12–2453(D). As discussed above, I believe Smith is the prevailing party here.

For the foregoing reasons, I would affirm the judgment of the trial court. Therefore, I respectfully dissent.